[No. D058769. Fourth Dist., Div. One. Jan. 11, 2013.]

STUMP'S MARKET, INC., Plaintiff, Cross-defendant and Respondent, v. PLAZA DE SANTA FE LIMITED, LLC, Defendant, Cross-complainant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I and II.

**COUNSEL**

Horvitz & Levy, Peter Abrahams, H. Thomas Watson, Katherine Perkins Ross; Wayne Thomas & Associates, Timothy D. Lucas, A. Kerry Stack; Law Offices of Charles S. LiMandri, Charles S. LiMandri; Law Office of Franco Simone and Francesco Simone for Defendant, Cross-complainant and Appellant.

Burke, Williams & Sorensen, Ronald F. Frank, Joseph P. Buchman, Mark J. Mulkerin and Michele L. Graeler for Plaintiff, Cross-defendant and Respondent.

OPINION

HUFFMAN, J.—Plaza de Santa Fe Limited, LLC (Plaza), and Stump's Market, Inc. (Stump's Market), have enjoyed a long contractual relationship in which Plaza leases certain commercial property in a shopping center to Stump's Market. Stump's Market operates a grocery store on the leased premises. Unfortunately, after a dispute regarding the calculation of rent, the existence of an option to extend the lease, and the payment of repairs to the parking garage in the shopping center, the parties found themselves embroiled in litigation. At trial, both the jury and the court found in favor of Stump's Market on the majority of its claims, both legal and equitable.

Plaza now appeals the judgment, raising three issues, but leaving the majority of the judgment unchallenged. Plaza disputes the factual finding of the validity of two options extending its lease with Stump's Market, one covering December 1, 2019, to November 30, 2024 (the 2019–2024 option), and another covering December 1, 2024, to November 30, 2029 (the 2024–2029 option). Plaza maintains that neither option is supported by consideration. Plaza also argues the 2024–2029 option violates the statute of frauds.

In the unpublished portion of this opinion, we determine Plaza never disputed the existence of the 2019–2024 option prior to or at trial. Accordingly, it waived the issue for appeal. We also conclude that substantial evidence supports the finding that the 2024–2029 option is valid. The evidence showed it was supported by consideration, and we agree with the trial court that equitable estoppel prevents the application of the statute of frauds.

■ In the published portion of this opinion, we address Plaza's claim that the court's retention of jurisdiction to enforce the judgment was improper. After granting specific performance as well as other equitable remedies, the court retained jurisdiction "to make further orders, including injunctions, if necessary in the future to effectuate and or enforce the Court's judgment." Although a court may retain jurisdiction to assure compliance with its judgment (*Dawson v. East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, 1044 [34 Cal.Rptr.2d 108] (*Dawson*)), such an exercise of jurisdiction is "exceptional and limited to special situations." (2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 420, p. 1070.) ■ We are concerned with the court retaining jurisdiction for the life of the lease, which may continue for another 17 years, and interjecting itself into a contractual relationship between two business entities to resolve future, hypothetical disputes. In addition, we note the trial court resolved all the issues between the parties and there appears to be little need for the court to be involved with

the administration of the lease until its end. Therefore, we conclude the court's unlimited retention of jurisdiction after judgment is improper and strike that portion of the judgment. We otherwise affirm the judgment as modified.

## FACTUAL AND PROCEDURAL HISTORY

### The Parties

Plaza is the owner and operator of a shopping center located in Rancho Santa Fe, California. Roger Woolley owned and managed Plaza.[1] Stump's Market owns and operates Village Market, the grocery store tenant in Plaza's shopping center. Stump's Market is a small, family-owned business managed primarily by James Stump.

### The Lease

The shopping center was constructed in 1974. Big Bear Super Market No. 3 (Big Bear) leased space in the shopping center from Hubert G. Larson. Big Bear operated a grocery store on the leased premises. The term of the lease, executed on May 23, 1974, was for 20 years with three additional five-year option periods. If all options were exercised, the tenancy would continue until November 30, 2009.

The rent due under the lease was 1.75 percent of Big Bear's gross sales over $1 million, with a monthly minimum (base) rent of $2,250. If the percentage rent exceeded $2,250 per month, Big Bear would pay the difference on an annual basis. The lease provided that the monthly minimum rent would be automatically increased every five years during the 20-year base term, and every five years after the base term (at the beginning of each option period), using a specific cost of living index.

In June 1974, Larson transferred his interest in the lease to "Gilman Ordway and Roger S. Woolley." Through a series of subsequent transfers, the lessor under the lease became Plaza, and Plaza's interest in the lease as the lessor was not disputed at trial.

In 1980, five years into the tenancy, the parties negotiated a substantial change to the lease (the 1980 amendment). The 1980 amendment increased the monthly minimum rent from $2,250 to $3,632 for the balance of the lease term. It also increased the percentage rent from 1.75 percent of gross sales over $1 million, to 1.88 percent of all gross sales, less the monthly minimum

---

[1] Woolley has since passed away.

rent. In addition, the parties agreed that the references to cost of living adjustments to minimum rent in the lease were deleted.

In 1994, at the end of the 20-year term of the tenancy, Big Bear exercised the first five-year option to extend its tenancy. Shortly thereafter, Big Bear assigned its rights under the lease to Stump's Market. In connection with the transfer of the tenancy, the lessor and lessee negotiated further changes to the lease during early 1995.

By letter dated June 7, 1995, signed by Woolley and countersigned by Stump's Market, Plaza agreed that in addition to the current option, Stump's Market would be granted five additional five-year options. Per this 1995 agreement, Stump's Market agreed to pay an increased percentage rate of 2 percent of gross sales, due quarterly, less the minimum monthly rent of $3,632 per month.

In 1999 and 2004, Stump's Market exercised the available five-year options to extend its tenancy. In both instances, Stump's Market sent a brief letter to Plaza stating its desire to exercise the option. On behalf of Plaza, Woolley countersigned the letters.

On March 1, 2005, in response to Stump's Market's written request, Woolley, on behalf of Plaza, provided Stump's Market with a letter stating that the remaining three options under the lease were as follows: December 1, 2009, to November 30, 2014; December 1, 2014, to November 30, 2019, and December 1, 2019, to November 30, 2024.

### Damage to the Parking Garage at the Shopping Center

In September 2008, Stump met with Woolley at Woolley's house to discuss damage to the parking garage below the Village Market premises at the shopping center. Woolley believed the damage was caused by condensation from the Village Market's freezer units. Stump, however, testified that part of the damage had occurred from a leak in 2001 that he brought to Woolley's attention. Woolley informed Stump that the previous owner knew about the leak, but never repaired it.

Both Woolley and Stump received estimates from engineers to repair the damage. Woolley and Stump ultimately agreed that Stump's Market would proceed with the repairs proposed by Stump's Market's engineer, which included replacing a laminated wood structural beam with a steel beam, a slightly more costly and arguably superior option than the repair suggested by Plaza's engineer. The lease called for Stump's Market to maintain and repair the premises, but there was evidence that the parties disagreed on who was

responsible for the damages. Stump told Woolley that he believed that Plaza "ha[d] some responsibility" for the damage and asked Plaza to pay for some of the repair costs. Woolley agreed that Plaza would pay for one-third of the total cost of the repairs with Stump's Market advancing Plaza's share of the expense by deducting Plaza's one-third share from its quarterly percentage payments. Stump agreed that Stump's Market would advance Plaza's share of the repair costs after Woolley told him he was having cash flow problems. Woolley then offered Stump an additional five-year option for Stump's Market for the period of December 1, 2024, to November 30, 2029.[2]

Also, during the September 2008 meeting, Stump's Market exercised its option for the period of December 1, 2009, to November 20, 2014, by giving Woolley a letter to that effect, which he countersigned.

A few days after the meeting, Stump sent a letter to Woolley memorializing their agreement. Woolley did not respond to the letter.

## The Dispute

After Stump's Market proceeded with the repairs, it sent a quarterly report to Plaza specifying the deduction from the third quarter 2008 percentage rent payment as agreed. Woolley then hired an accountant to audit the repair cost and monitor his cost sharing, requesting that the accountant verify whether Plaza's cost sharing split was 25 percent or 30 percent. Stump's Market calculated the balance of Plaza's share of the cost of the repairs in its January 2009 quarterly report and rent payment. Woolley, however, on behalf of Plaza, sent a letter to Stump's Market stating he did not remember agreeing to pay for a portion of the repairs to the parking garage.

Stump's Market and Plaza then exchanged letters arguing their positions about (1) the calculation of rent under the lease; (2) the cost sharing agreement for the repairs; (3) Stump's Market's exercise of the option to extend the lease until November 30, 2014, and the rent to be paid during this period if the option was exercised; and (4) the 2024–2029 option. Eventually, Plaza served Stump with a 20-day notice to pay rent or quit, demanding $29,140 in unpaid rent, the same amount Stump's Market withheld for Plaza's share of the repairs. In response, Stump's Market paid Plaza the disputed $29,140 under protest and with a full reservation of rights. Stump's Market also filed suit to have the court declare the parties' respective rights under the lease and all available option periods.

---

[2] Stump testified that Woolley declined his previous requests for two additional five-year options. However, after Stump and Woolley agreed to share the repair costs and Stump agreed to advance Woolley's portion of the repair costs, Woolley granted Stump's Market an additional five-year option.

Plaza responded with a letter to Stump's Market terminating the lease. As justification for its election to terminate the lease, Plaza claimed Stump's Market failed to pay a portion of its quarterly rent in the third and fourth quarters of 2008 for a total amount of $29,140 as well as $87,168 for the previous two years in monthly rent. Stump's Market sent Plaza a letter denying Plaza's claims. Plaza subsequently filed a cross-complaint against Stump's Market for ejectment.

## The Trial

The dispute proceeded to a jury trial. The jury found predominately in favor of Stump's Market. To this end, the jury concluded that the parties intended the monthly minimum rent to be fixed at $3,632 for the duration of Stump's Market's tenancy, including all option periods. In addition, the jury found (1) Stump's Market committed a nonmaterial breach of the lease by failing to properly maintain and repair the premises, but otherwise was not in breach of the lease;[3] (2) Stump's Market exercised its option to extend the lease through November 30, 2014; (3) Plaza agreed to pay for one-third of the repairs to the parking garage and Stump's Market was entitled to $29,140 in damages; (4) Plaza gave Stump's Market a valid option to extend its tenancy from December 1, 2024, to November 30, 2029; (5) Plaza overcharged Stump's Market for maintenance fees for the parking garage and facilities and Stump's Market was entitled to a refund of $87,719; and (6) both parties breached the covenant of good faith and fair dealing and were entitled to $1 of damages.

After the jury rendered its verdict, the trial court considered the parties' respective equitable claims. The court accepted all of the factual findings and issued rulings favorable to Stump's Market on all claims in a very detailed statement of decision. Most pertinent to the issues raised in the appeal, the court declared Stump's Market had effectively exercised the option for the period December 1, 2009, to November 30, 2014, and Stump's Market holds three additional five-year options with the last option period ending November 30, 2029. The court also ordered specific performance of the lease, including the option periods if Stump's Market exercises them and remains in compliance with the lease. In addition, the court reserved its "jurisdiction to make further orders, including injunctions, if necessary in the future to effectuate and enforce the Court's judgment."

Plaza timely appealed.

---

[3] The repairs to the parking garage were not entirely complete at the time of trial as mold and additional water damage were found in the structure. At the time of trial, repairs to the parking garage were ongoing.

## DISCUSSION

Plaza raises three issues on appeal. The first two issues involve Plaza's challenge to the validity of the 2019–2024 option and the 2024–2029 option. Plaza argues that both these options are invalid as a matter of law. Next, Plaza contends the court has no justification for retaining jurisdiction over the dispute following the judgment. We conclude Plaza's first two arguments are without merit, but agree with its final contention and modify the judgment accordingly.

### I, II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III

### *CONTINUING JURISDICTION AFTER JUDGMENT*

After the jury rendered its verdict, the court agreed with the jury's findings of fact and adjudicated equitable claims. To this end, the court ordered Plaza to "perform all conditions, covenants, and promises required to be performed by Plaza under (i) the Lease as amended, and (ii) this judgment." In addition, it required Plaza to "permit Stump's Market to continue in possession of the premises" until the expiration of the current option period (Nov. 30, 2014), "unless and until the Court determines in the future that Stump's Market is no longer entitled to possession." The court also ordered Plaza to allow Stump's Market to remain in possession of the premises if it properly exercises future options, "unless and until the Court determines in the future that Stump's Market is no longer entitled to possession." The court declined to grant any injunctive relief. However, the court retained jurisdiction "to make further orders, including injunctions, if necessary in the future to implement the Court's judgment granting specific performance and declaring the parties' rights and responsibilities." The court also stated it was retaining jurisdiction "to effectuate or enforce" the judgment.

Both parties agree that "[j]urisdiction over a cause or parties after a final judgment, order, or decree is exceptional and limited to special situations." (2 Witkin, Cal. Procedure, *supra*, Jurisdiction, § 420, p. 1070.) They, however, dispute whether this case qualifies as the appropriate "special situation." Plaza argues the court's retention of jurisdiction here constitutes unjustified judicial supervision of the parties' continuing contractual relationship.

*See footnote, *ante*, page 882.

Stump's Market characterizes the court's retention of jurisdiction as "limited" and proper to allow the court to enforce its judgment.

■ Here, the court reserved its jurisdiction to enforce the judgment, specifically its order of specific performance. " 'The jurisdiction of a court of equity to enforce its decrees is coextensive with its jurisdiction to determine the rights of the parties, and it has power to enforce its decrees as a necessary incident to its jurisdiction. Except where the decree is self-executing, jurisdiction of the cause continues for this purpose, or leave may be expressly reserved to reinstate the cause for the purpose of enforcing the decree, or to make such further orders as may be necessary.' " (*Day v. Sharp* (1975) 50 Cal.App.3d 904, 912 [123 Cal.Rptr. 918], quoting *Klinker v. Klinker* (1955) 132 Cal.App.2d 687, 694 [283 P.2d 83].) "It follows that retention of jurisdiction by the court for the purpose of interpreting and enforcing its judgment is within the scope of declaratory relief." (*Dawson, supra*, 28 Cal.App.4th at pp. 1044–1045.) Ostensibly, this authority suggests the court did not abuse its discretion in retaining jurisdiction after the judgment. However, we are mindful that the court reserved jurisdiction over what could be the next 17 years (over 19 years from the date of judgment) if Stump's Market exercises all the options. We are unaware of any reported case in which a court retained jurisdiction for a similar length of time to essentially govern the parties operating under a contract negotiated at arm's length.

In *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586 [83 Cal.Rptr. 418, 463 P.2d 770], the trial court found that the defendants' negligence had resulted in damage to the plaintiff in the sum of $137,606.20 as of the date of the conclusion of the trial, but also found that the defendants were liable on additional unsettled claims that the plaintiff could have to pay under an insurance policy (the defendants were found liable for negligently computing the premium rate for an insured). The trial court reserved continuing jurisdiction "to amend the judgment to insert the amount of the additional sums . . . when the amounts were determined." (*Id.* at p. 591.) Our high court determined the trial court's reservation of jurisdiction was proper and noted, "The claimants were known, the claims were in the process of settlement, and plaintiff's liability therefor had been adjudicated in the rescission action." (*Id.* at p. 599.) Although the opinion does not clarify when the outstanding claims would be resolved, the court was clear that the open claims would result in additional amounts the plaintiff would be obligated to pay to defend and/or settle the claims. And the plaintiff would be damaged based on the defendants egligently computing the premium rates. (*Id.* at pp. 598–599.) In other words, the trial court's retention of jurisdiction to award additional damages was proper because there was no doubt that the plaintiff would incur additional damages arising from the defendants' already determined negligence.

*Central and West Basin Water Replenishment Dist. v. Southern Cal. Water Co.* (2003) 109 Cal.App.4th 891 [135 Cal.Rptr.2d 486] (*Central*) involved a suit about the adjudication of water rights and injunctive relief with respect to a groundwater basin. The trial court entered the parties' stipulated agreement as its judgment, but retained jurisdiction " '[t]o provide for such other matters as are not contemplated by the judgment and which might occur in the future, and which if not provided for would defeat any or all of the purposes of this judgment to assure a balanced Central Basin subject to the requirements of Central Basin Area for water required for its needs growth and development.' " (*Id.* at p. 903.) The Court of Appeal concluded the trial court's retention of jurisdiction was proper, noting, "Courts regularly affirm the expansive retention of jurisdiction in cases involving water rights." (*Ibid.*) The court determined the trial court properly reserved jurisdiction "to meet future problems and adapt to changed circumstances." (*Ibid.*)

In *In re Marriage of Schenck* (1991) 228 Cal.App.3d 1474 [279 Cal.Rptr. 651], as part of a marriage dissolution proceeding, the family law court entered a deferred sale of home order, which awarded the wife exclusive occupancy of the former family residence for three ·years and expressly reserved judgment over its ultimate " 'valuation and disposition.' " (*Id.* at p. 1476.) The wife subsequently applied for an order for sale of the husband's interest in the residence. The law and motion department of the superior court denied the application, finding the family law court retained jurisdiction regarding the value and disposition of the residence. (*Id.* at p. 1478.) The wife appealed and the Court of Appeal affirmed, concluding the family law court properly retained jurisdiction. (*Id.* at pp. 1483–1484.)

In *Day v. Sharp, supra,* 50 Cal.App.3d 904, the plaintiff obtained an equitable decree providing her with a constructive trust on one-seventh of the residual estate of the plaintiff's stepmother. (*Id.* at p. 907.) Twelve years later, the plaintiff filed a motion in superior court to reduce the equitable decree to a monetary judgment. The court granted the motion and reduced the judgment to a specific monetary sum. (*Id.* at pp. 908–909.) One of the defendants appealed, claiming, among other things, that the court lacked the jurisdiction to reduce the equitable decree to a money judgment. The Court of Appeal noted that when the judgment was entered in the plaintiff's case in 1961, the actual amount of the constructive trust could not be determined. As such, the Court of Appeal concluded, "the trial court properly retained jurisdiction so as to do full and final justice between plaintiff and the defendants without the necessity of filing a new action." (*Id.* at p. 912.)

Although these cases are not exhaustive, they do provide a good sample of the kind of matters courts have deemed sufficiently "special" as to require the court to retain jurisdiction after judgment. Here, no facts analogous to these

cases exist. The court cannot be concerned about damages being calculated in the future. (See *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc., supra*, 1 Cal.3d at pp. 598–599; *Day v. Sharp, supra*, 50 Cal.App.3d at p. 912.) Indeed, all damages arising from the claims pled have been calculated and awarded to Stump's Market. This case does not concern water rights. (See *Central, supra*, 109 Cal.App.4th at p. 903.) Nor is this a marriage dissolution action requiring the court to retain jurisdiction to ultimately dispose of the former family residence. (*In re Marriage of Schenck, supra*, 228 Cal.App.3d at pp. 1483–1484.)

Contrary to the matters in which courts have found retention of jurisdiction after judgment proper, here, there is no future event that is certain to occur that will require modification of the judgment. Instead, it appears the trial court is concerned that Plaza will take certain steps to frustrate Stump's Market's possession of the leased premises or otherwise refuse to allow specific performance. Perhaps the court's concern is well justified. The jury did not appear to believe the majority of Plaza's witnesses or its version of the facts. The court shared the jury's skepticism. The statement of decision implies that Plaza created excuses to terminate the lease, and Plaza was motivated by a desire to maximize profits in contradiction to its long-standing, friendly business relationship with Stump's Market. Although the court might be correct that Plaza will continue to try to invent reasons to terminate the lease, there is no certainty that Plaza will do so.

We also are mindful that the court declined to grant Stump's Market injunctive relief, which could have necessitated the retention of jurisdiction. (See *Sontag Chain Stores Co. v. Superior Court* (1941) 18 Cal.2d 92, 94–95 [113 P.2d 689].) Although the court qualified its decision to deny injunctive relief with the prepositional phrase "at this time," this qualification relates to the possibility of the court "implement[ing] the . . . granting [of] specific performance and declaring the parties' rights and responsibilities." We are not persuaded these reasons justify the court retaining jurisdiction after judgment for such a lengthy period of time. The judgment includes an award of specific performance of the lease and all options through November 30, 2029. If Plaza refuses to comply with the order of specific performance at a future date, Stump's Market is armed with a well written, comprehensive judgment that it can seek to enforce. Thus, the court's retention of jurisdiction, potentially for the next 17 years, is unnecessary to ensure compliance with the judgment.

■ Further, we are troubled by the court's reasoning that it retain jurisdiction to declare the parties' rights and responsibilities in the future. Under California law, a case normally must present an actual controversy between the parties before a court will entertain it. (*Golden Gate Bridge & Highway Dist. v. Felt* (1931) 214 Cal. 308, 316 [5 P.2d 585].) Here, the

parties disagreed about certain terms of the lease, compliance with the lease, the calculation of rent, and the existence of an option. These issues were resolved. Neither party has indicated any issue that remains unanswered. As there are no continuing disputes, we see no justification for the court to interject itself into the contractual relationship between the two parties to resolve hypothetical, future issues. (Cf. *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170 [188 Cal.Rptr. 104, 655 P.2d 306]; *Wilson v. L.A. County Civil Service Com.* (1952) 112 Cal.App.2d 450, 452–453 [246 P.2d 688] [" 'A judicial tribunal ordinarily may consider and determine only an existing controversy, and not a moot question or abstract proposition.' "].)

In essence, by retaining jurisdiction after judgment in this matter, the court is sitting as a predispute referee in the event the parties disagree in the future. To this end, the judgment includes the provision that Stump's Market is to remain in possession of the premises through the life of the lease, including all option periods if exercised, until the court "determines in the future that Stump's Market is no longer entitled to possession." We are troubled by the court's involvement in the parties' business relationship after the resolution of the action. Neither party has provided us with any authority that would allow the court to do so. Our independent research was no more successful in uncovering any such case.

While we find the court's retention of jurisdiction after judgment to be improper on the record before us, we do nothing to disturb the court's order of specific performance. We expect Plaza to abide by the judgment. It tried to get out of the lease and lost handily. If it refuses to follow the judgment in the future, nothing in this opinion should be read as limiting the superior court from taking any and all necessary steps and ordering the proper injunctive relief, enforcing specific performance, and if necessary, retaining jurisdiction to ensure Plaza's compliance.

## DISPOSITION

We strike the following from the judgment:

1. Page 8, lines 4 and 5 consisting of: "unless and until the Court determines in the future that Stump's Market is no longer entitled to possession."

2. Page 8, lines 7 through line 9 consisting of: "unless and until the Court determines in the future that Stump's Market is no longer entitled to possession."

3. Page 8, lines 13 through 15 consisting of: "The Court reserves jurisdiction to make further orders, including injunctions, if necessary in the future to implement the Court's judgment granting specific performance and declaring the parties' rights and responsibilities."

4. Page 10, lines 11 through 13 consisting of: "unless and until the Court determines in the future that Stump's Market is no longer entitled to possession."

5. Page 10, lines 18 through 19 consisting of: "unless and until the Court determines in the future that Stump's Market is no longer entitled to possession."

6. Page 11, lines 3 through 4 consisting of: "The Court reserves jurisdiction to make further orders, including injunctions, if necessary in the future to effectuate or enforce the court's judgment."

We affirm the judgment as modified. Each party is to bear their own costs on this appeal.

McConnell, P. J., and McDonald, J., concurred.