Filed 2/11/16  Steinberg, as Trustee v. Steinberg CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| NISAN STEINBERG, as Trustee, etc.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MARVIN STEINBERG et al.,<br><br>    Respondents. | B261480<br><br>(Los Angeles County<br>Super. Ct. No. BP144659) |

APPEAL from a judgment of the Superior Court of Los Angeles County.
Maria E. Stratton, Judge.  Affirmed in part, reversed in part with directions.

Marc B. Hankin; and Evan D. Marshall for Plaintiff and Appellant.

No appearance for Respondents.

_____

This appeal involves a trust created by Marvin Steinberg, who is still living.[1] In 2013, Marvin was removed as trustee pursuant to a disability clause. His son Nisan succeeded him in that position. Marvin subsequently married his second wife, Tamara Beaver. Marvin's family did not approve of the relationship and believed Tamara and her associates were taking advantage of Marvin's impaired cognition. As a result, Nisan filed a conservatorship action in San Diego County Superior Court prior to filing the present trust action in Los Angeles County. Acting as trustee and as Marvin's power of attorney, Nisan also amended the trust to disinherit Tamara and her associates from sharing in Marvin's estate. Finally, Nisan filed a petition to compel an accounting from Tamara and her associates, whom he alleges dissipated Marvin's income and assets.

The probate court ruled that Nisan lacked the authority to amend the trust to disinherit Tamara and it dismissed the petition to compel an accounting on the ground it would more properly be resolved in the conservatorship action. Nisan appealed these orders. Because the probate court should have transferred the petition to compel an accounting to the court adjudicating the conservatorship action, we reverse the probate court's order dismissing the petition. We otherwise affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The Marvin B. Steinberg Living Trust was established on February 9, 1998. It was replaced by a Second Amendment and Complete Restatement (second amendment) Marvin executed on September 2, 2008, which established a process by which the trust and its assets would be administered in the event of his disability or death. Under the second amendment, a disability panel was created, consisting of Marvin's three children—Nisan Steinberg, Deborah Antler and Ellen Geatches—and his son in law, Derek Antler. The disability panel was empowered to issue a "final, binding and controlling" determination of disability, at which time Nisan would become the trustee.

---

[1] To avoid confusion, where appropriate we use the first names of family members. We intend no disrespect by this informality. (*Warfield v. Summerville Senior Living, Inc.* (2007) 158 Cal.App.4th 443, 445, fn. 1.)

The second amendment also provided "[i]n the event that [Marvin became] disabled, and unable to sign, an agent who has been named under a valid Power of Attorney shall act on [his] behalf." Marvin also executed a durable Power of Attorney on September 2, 2008, naming Nisan as his attorney in fact.[2]

Marvin's mental capacity began to deteriorate in or around 2011. Sometime in 2012, Marvin met Tamara Beaver and began a relationship with her. Marvin's family believed Tamara, an escort who advertised her services on the internet, was taking advantage of Marvin. She alienated him from his family by convincing him that his children wanted to put him in an institution. Not only did she move into Marvin's home, her longstanding boyfriend Kurt Van Gorder also moved in, ostensibly to provide 24-hour care for Marvin. Tamara shared a bedroom with Van Gorder. Tamara also hired several attorneys to represent Marvin, but the family believed the attorneys actually worked only to further Tamara's interests.

In December 2012, Marvin advised his trust attorney he intended to marry Tamara and asked about a prenuptial agreement. On April 9, 2013, the disability panel unanimously found Marvin disabled. Despite the declaration of disability, Marvin executed a fourth amendment (fourth amendment) to his trust on June 4, 2013, appointing Tamara as co-trustee. Meanwhile, Nisan prepared an amendment to the second amendment on June 30, 2013, which expressly disinherited Tamara and various other people whom he believed were taking advantage of his father, including Van Gorder and the attorneys hired by Tamara (Nisan's amendment). Marvin revoked the durable power of attorney as to Nisan on July 7, 2013. Marvin and Tamara married in 2013, when he was 85 years old.

On August 27, 2013, Marvin's children filed a petition under Probate Code section 17000 for an order to validate the trust as it is stated in the second amendment, validate the decision of the disability panel to remove Marvin as trustee and replace him with

---

[2] Ellen was also named as an attorney in fact, but she resigned on April 19, 2013.

3

Nisan, invalidate the fourth amendment designating Tamara as co-trustee and validate Nisan's amendment disinheriting Tamara and others.

The probate court assigned Marvin a guardian ad litem (guardian), who filed trial briefs for the court's consideration. The guardian and Nisan submitted a stipulation on the truthfulness of facts and genuineness of documents for the probate court's consideration, which outline the facts presented above.

In his trial brief, Marvin's guardian reported there was no dispute that Marvin knowingly established the second amendment and the disability panel acted in accordance with the second amendment to remove Marvin as trustee. The guardian also reported "Marvin suffered from delusional thinking when he executed the Fourth Amendment on June 4, 2013 . . . Marvin believed that his family was trying to put him away in an institution." Thus, even if the disability panel lacked the authority to prevent Marvin from making the fourth amendment, he lacked capacity to execute the fourth amendment because he had significant mental function deficits and was subject to undue influence by Tamara.

However, the guardian noted the court in the conservatorship action has not seen fit to remove Tamara from Marvin's house and has had to order Nisan to provide weekly grocery deliveries, pay for Marvin's car, pay insurance, and provide money for gasoline and spending money. The guardian recommended Nisan remain as trustee but that Marvin's trust be made subject to court supervision.

On July 29, 2014, Nisan filed a petition in this case seeking to compel an accounting from Tamara and her cohorts, alleging they had taken trust funds and co-mingled trust and non-trust assets. The probate court found the second amendment to be a valid and existing trust and the provisions creating the disability panel to be valid. The court further found Nisan to be a duly appointed agent under the power of attorney executed on September 2, 2008. It determined the disability panel validly removed Marvin as trustee and therefore Marvin lacked capacity to execute the fourth amendment appointing Tamara as co-trustee and revoking the durable power of attorney. However, the court also ruled Nisan lacked authority to change the terms of the trust and his attempt

4

to disinherit Tamara or any of her group was invalid. The probate court declined to take the trust under court supervision and dismissed without prejudice the request for an accounting, ruling that the matter should be heard in the conservatorship action. Nisan appealed the probate court's decision. We affirm the judgment. While we agree with the probate court that the accounting should be heard in San Diego with the conservatorship action, we find dismissal was not the appropriate remedy. We reverse the dismissal of the petition to compel an accounting and remand the case to the probate court to instead issue an order transferring the matter to the court hearing the conservatorship action in San Diego County.

## DISCUSSION

On appeal, Nisan challenges the probate court's finding that he lacked authority to execute Nisan's amendment to restore the trust's distribution as specified in the second amendment. Nisan also contends the probate court abused its authority in dismissing the petition for an accounting. No respondents' briefs have been filed. California Rules of Court, rule 8.220 allows an appellate court in such a situation to decide an appeal on the record, the opening brief and any oral argument by the appellant. We examine the record on the basis of appellant's brief and reverse only if prejudicial error is found. (*Lee v. Wells Fargo Bank* (2001) 88 Cal.App.4th 1187, 1192, fn. 7.) We conclude the probate court should have transferred the petition for an accounting to the conservatorship court, but otherwise find no error.

**I.      Nisan's Amendment**

On June 30, 2013, Nisan executed an amendment to the trust which expressly disinherited Tamara and her issue, "leaving them nothing."[3] Nisan contends he had the

---

[3]      Nisan's amendment also disinherited a number of named individuals associated with Tamara, including Van Gorder and the attorneys who purportedly represented Marvin. Given the probate court's determination that Marvin lacks the capacity to amend his trust, which has not been appealed, and that there is also no indication Marvin intended to or did provide for any of the individuals named, we need not address Nisan's attempt to preemptively disinherit these individuals from the trust. "[A] case normally must present an actual controversy between the parties before a court will entertain it."

5

authority to execute the amendment through his role as trustee and Marvin's attorney-in-fact. Nisan bases his authority on Article Four, section 1(d) of the second amendment which states, "I shall have the absolute right to amend or revoke my trust, in whole or in part, at any time. Any amendment or revocation must be in writing, signed by me, notarized, and delivered to my Trustee. [¶] The right to amend or revoke my trust is personal to me. In the event that I am disabled, and unable to sign, an agent who has been named under a valid Power of Attorney shall act on my behalf."

On September 2, 2008, Marvin created a financial durable power of attorney, which expressly authorized Nisan to create and amend revocable trusts. However, the power of attorney expressly stated that such an amendment "shall not materially alter the disposition of [Marvin's] estate under an existing will or other inter vivos trust and the distribution provisions of such created trust shall be made to the same persons, in the same proportion and on the same terms as [his] estate would be distributed upon [his] death under an existing will or trust." Nisan contends the second amendment and the power of attorney grant him the requisite authority to execute Nisan's amendment because it does not materially alter the disposition of his father's estate under an existing will or trust. We disagree.

Nisan exceeded his authority to amend the trust because a distribution under Nisan's amendment would fail to distribute Marvin's estate "in the same proportion and on the same terms as [his] estate would be distributed upon [his] death under an existing will or trust." This is because the existing trust, namely the second amendment, predates Marvin's marriage to Tamara and she is entitled under the Probate Code[4] to a share of Marvin's estate as an omitted spouse. Under section 21610, "if a decedent fails to provide in a testamentary instrument for the decedent's surviving spouse who married the decedent after the execution of all of the decedent's testamentary instruments, the omitted

---

(*Stump's Market, Inc. v. Plaza de Santa Fe Limited, LLC* (2013) 212 Cal.App.4th 882, 892.)

[4] Further section references are to the Probate Code unless otherwise specified.

6

spouse shall receive a share in the decedent's estate. . ." unless one or more of the exceptions in section 21611 applies.[5] The express terms of the durable power of attorney granted to Nisan limits his authority to amend the trust to disinherit Tamara.

The Probate Code directs us to the same conclusion. In *Schubert v. Reynolds* (2002) 95 Cal.App.4th 100 (*Schubert*), the father died, leaving four children and one house. Two months before he died, he executed a general power of attorney designating one of his daughters as his attorney-in-fact. This daughter created a trust in her father's name the day before he died which provided the house would be held in trust for her benefit for her lifetime, the remainder to pass to the grandchildren. In creating the trust and designating herself as the beneficiary, she effectively bypassed her three siblings, who sued. (*Id.* at p. 102.) The court held the daughter lacked the authority to designate herself as the beneficiary in contravention of the laws of intestate succession and the terms of a previous will, which was lost. (*Id.* at pp. 105-106.)

The court reached its decision by interpreting section 4264, which provides in pertinent part: "An attorney-in-fact under a power of attorney may perform any of the following acts on behalf of the principal or with the property of the principal only if the power of attorney expressly grants that authority to the attorney-in-fact: (a) Create, modify, revoke, or terminate a trust, in whole or in part. If a power of attorney under this division empowers the attorney-in-fact to modify or revoke a trust created by the principal, the trust may be modified or revoked by the attorney-in-fact only as provided in the trust instrument . . . . [¶] . . . (f) Designate or change the designation of beneficiaries to receive any property, benefit, or contract right on the principal's death." (§ 4264, subds. (a) & (f).)

---

[5]     Under section 21611, the omitted spouse shall not receive a share of the estate if "(a) The decedent's failure to provide for the spouse in the decedent's testamentary instruments was intentional and that intention appears from the testamentary instruments. [¶]  (b) The decedent provided for the spouse by transfer outside of the estate passing by the decedent's testamentary instruments and the intention that the transfer be in lieu of a provision in said instruments is shown by statements of the decedent or from the amount of the transfer or by other evidence.  [¶]  (c) The spouse made a valid agreement waiving the right to share in the decedent's estate."

7

The *Schubert* court held an attorney-in-fact's authority to create, modify, revoke, or terminate a trust under subdivision (a) was constrained by the provision in subdivision (f) prohibiting him from changing the designation of beneficiaries unless expressly authorized to do so. The court explained, "An attorney-in-fact may create a trust when so authorized by the terms of the power of attorney, but the power to designate particular trust beneficiaries is limited. . . . Under those circumstances, the attorney-in-fact would not be the one selecting the beneficiaries. In effect, they would be designated by either the principal, pursuant to the principal's original estate plan, or the Legislature, according to the laws of intestate succession." (*Schubert, supra,* at pp. 103-106.)

Nisan is likewise constrained by section 4264, subdivision (f) to execute the amendment disinheriting Tamara and her issue. The financial power of attorney in this case granted Nisan the authority the power to create and amend revocable trust agreements. However, it did not authorize Nisan to "[d]esignate or change the designation of beneficiaries to receive any property, benefit, or contract right on the principal's death." Tamara qualifies as an omitted spouse under section 21610. As in *Schubert,* Nisan is not authorized to use his power of attorney to circumvent the provisions of section 21610.

Having determined Nisan's amendment is invalid, we need not reach the question of whether sufficient evidence demonstrates any of the exceptions listed under 21611 exist. As Marvin has not yet died, we cannot yet determine whether any exception applies. Further, even if Tamara could be divested of her rights to Marvin's estate under a section 21611 exception, Nisan's amendment would not be rendered valid as a result. Nor do we address whether the trust could be amended or revised as part of the conservatorship proceedings, whether the marriage is valid, or whether any of the relevant instruments were procured by undue influence.

8

**II.     Accounting**

On July 29, 2014, Nisan filed a petition and complaint for an order compelling an accounting of both trust and non-trust funds from Tamara, Van Gorder, Robert Blasi, Richard Bain, and Lauren Arens. Nisan alleged he was issued letters of temporary conservatorship from the court in San Diego and was suing in that capacity as well as in his capacities as trustee and power of attorney. Nisan alleged Marvin suffers from a neurodegenerative disease, most likely Alzheimer's, and uncontrolled Type II diabetes. Marvin's illness has left him vulnerable to the respondents' undue influence, resulting in the dissipation of his assets.

As to Tamara and Van Gorder, Nisan alleged they isolated Marvin from his family by leading him to believe his family wanted to institutionalize him. Nisan also alleged Tamara and Von Gorder, with whom Marvin lives, were not properly caring for him, as they failed to provide him with necessary medication for his illness and his living area was dirty and a fire hazard. Further, Nisan claims Tamara defrauded Marvin into marrying her even though he lacked the capacity to marry. The petition alleged Tamara diverted trust funds as well as non-trust funds into joint accounts which she accesses and uses for her own benefit. Tamara has also allegedly incurred significant amounts of debt using Marvin's credit. Von Gorder allegedly drew down on Marvin's long term care insurance policies by falsely claiming to be his care provider.

As to Bain, Blasi, and Arens, Nisan alleged they were attorneys who purportedly represented Marvin in various actions, including a malpractice action against Marvin's doctor and in the conservatorship action. However, they breached their fiduciary duties to him by taking property from him while he lacked the capacity to consent. It was further alleged they worked to further the interests of Tamara and Van Gorder rather than Marvin. Nisan sought an order requiring respondents to file an accounting with the court covering the period from October 1, 2011, involving any trust or non-trust assets held by Marvin. At the hearing on the petition, both Bain and Marvin's guardian argued the matter should be heard in San Diego. Nisan sought to recover funds paid to Bain for legal services he provided to Marvin. Bain advised the probate court at the hearing on

9

the petition that his fee dispute was currently pending before the court hearing the conservatorship action.

The probate court, after conferring with counsel and the guardian, found the issues presented in the petition to be more properly adjudicated in the conservatorship action in San Diego. We agree. It is clear Nisan's petition for accounting exceeds the relief the probate court may grant in this matter because Nisan seeks an accounting of both trust and non-trust assets. Venue was proper in Los Angeles solely as to those issues relating to the trust because Nisan, the trustee, resides and administers the trust in Los Angeles. (§ 17005, subd. (a).)

In a matter involving non-trust assets, however, venue lies in San Diego, where the respondents reside. (§ 17005, subd. (c); Code Civ. Proc., § 395.) It is undisputed that Marvin, Tamara, and Van Gorder live in Marvin's home in San Diego. The record also shows Blasi and Bain are residents of San Diego county and Arens lists her office in San Diego. Nisan recognized the venue requirements when he filed the conservatorship action in San Diego. Indeed, judicial economy would favor the accounting petition be heard in the same court set to hear evidence regarding Marvin's competency since there are numerous overlapping issues. Nisan may not manufacture venue in Los Angeles by mixing his accounting action involving trust assets with his non-trust dispute. In such a mixed action case, where each cause of action is governed by a different venue provision, venue must be proper as to all causes of action and all defendants. (*Brown v. Super Court* (1984) 37 Cal.3d 477, 488.) All defendants reside or work in San Diego and the petition for accounting should have been transferred there.[6] (*Ibid.*) Dismissal was an inappropriate remedy. (Code Civ. Proc., § 396, subd. (a) ["No appeal or petition filed in

---

[6] Arens filed a motion to transfer venue to San Diego on Marvin's behalf early in this action. That motion was denied. Respondents failed to renew the motion when Nisan filed the petition for an accounting a year later. It would appear respondents have waived their rights with respect to the issue of improper venue. (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 121-122.) However, on appeal Nisan contends as an alternative argument that the matter should be transferred to San Diego rather than dismissed. Given the lack of a respondent's brief and the correctness of Nisan's position, as discussed above, we exercise our discretion to transfer the matter.

10

the superior court shall be dismissed solely because the appeal or petition was not filed in the proper state court"].)

**DISPOSITION**

The order dismissing Nisan's petition and complaint seeking an accounting is reversed, with directions to the probate court to issue an order transferring the matter to the court hearing the conservatorship action in San Diego County. The judgment is otherwise affirmed. Appellant to bear his own costs on appeal.


                                        BIGELOW, P.J.

We concur:


        RUBIN, J.


        FLIER, J.