Filed 8/31/23  Sweeney v. Regional Water Quality Control Bd. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| JOHN SWEENEY, <br><br> Plaintiff and Appellant, <br> v. <br> REGIONAL WATER QUALITY CONTROL BOARD, SAN FRANCISCO BAY REGION, <br><br> Defendant and Respondent. | A166629 <br><br> (Solano County <br> Super. Ct. No. FCS048136) |

The Regional Water Quality Control Board, San Francisco Bay Region (the Board) obtained a judgment of more than two million dollars against John Sweeney and a club he owned, the Point Buckler Club, LLC (the Club). The trial court later granted the Board's motion for an order assigning to it certain assets and income of Sweeney, the Club, and Sweeney's wife, Jennifer Lesa Frost, to satisfy the judgment. Sweeney appeals this order, contending that it is overbroad and that the court lacks jurisdiction over Frost. The Board asks us to dismiss the appeal due to Sweeney's ongoing disobedience of court orders. We decline to dismiss the appeal, and we affirm the order.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### I. This Dispute

The facts underlying the judgment were set forth in a decision by a different panel of this division. (*Sweeney v. California Regional Water Quality Control Bd.* (2021) 61 Cal.App.5th 1093 (*Sweeney I*).) Briefly, Sweeney bought an island in Suisun Marsh that appears to have been previously used as a managed wetland for duck hunting. He transferred ownership to the Club, of which he is the managing member, and they began operating the island as a private recreational area for kiteboarding. Wishing to restore the site as a duck hunting club, Sweeney carried out unpermitted development projects on the island, including restoring an exterior levee that had been breached in multiple places. (*Sweeney I, supra*, 61 Cal.App.5th at pp. 1106–1107.)

The San Francisco Bay Conservation and Development Commission (BCDC) inspected the site in 2014 and observed that the levee construction work had removed tidal flow to the site's interior and dried out tidal marsh areas. Concluding the site was a tidal marsh rather than a managed wetland, BCDC directed Sweeney to stop work and told him that any work that could not be retroactively approved through the permit process would likely need to be removed and the site restored to tidal marsh. (*Sweeney I, supra*, 61 Cal.App.5th at pp. 1107–1108.)

Separately, the Board began an enforcement proceeding against Sweeney and the Club based on violations of the federal Clean Water Act of 1977 (33 U.S.C. § 1251 et seq.) and the California Water Code. It ultimately issued cleanup and abatement order number R2-2016-0038 (the abatement order) on August 12, 2016, as well as administrative civil liability order

2

No. R2-2016-0008 (the liability order) assessing $2.8 million in penalties. (*Sweeney I, supra*, 61 Cal.App.5th at pp. 1106–1110.)

Sweeney and the Club brought writ proceedings challenging the orders, and they prevailed in the trial court. On February 18, 2021, in *Sweeney I*, this division reversed the judgments and directed the trial court to deny the petitions for writ of mandate and requests to set aside the abatement and liability orders. (*Sweeney I, supra*, 61 Cal.App.5th at pp. 1107, 1151.)

On remand, the trial court entered judgment against Sweeney and the Club (collectively, the judgment debtors), jointly and severally, and in favor of the Board in the amount of $2,828,000 on September 3, 2021. As we explain in another case we decide today, *Sweeney v. Regional Water Quality Control Board* (Aug. 30, 2023, No. A163683) (nonpub. opn.) (No. A163683), the trial court also granted the Board's request for an injunction requiring Sweeney and the Club to comply with the abatement order.[1]

The judgment debtors did not pay the judgment, claiming inability to do so. The Board unsuccessfully sought discovery, including interrogatories, document requests, and efforts to meet and confer, to assist them in enforcing the judgment. We will discuss the Board's efforts in further detail below.

On June 24, 2022, the Board moved for an order assigning to it the judgment debtors' interests in assets, payments, and future earnings and, to the extent allowed by law, assigning Frost's future earnings to the Board, and restraining the judgement debtors from disposing of nonexempt amounts.

---

[1] On our own motion, we take judicial notice of the appellate record in No. A163683. We grant the Board's request for judicial notice, filed May 26, 2023, of an order of this court denying Sweeney's petition for habeas corpus (*Sweeney v. Superior Court* (Jan. 20, 2023, A166041)) and filings in a bankruptcy action filed by the Club in the Eastern District of California, which we discuss in more detail below.

Before the August 24 hearing, the trial court issued a tentative ruling granting the motion but directing the Board to modify its proposed order to exclude Sweeney's homestead exemption. (Code Civ. Proc., § 704.730.)[2] At the hearing, the Board submitted a revised proposed order that excluded any amounts exempted pursuant to a valid homestead declaration. The trial court assured Sweeney that the order preserved his right to assert the homestead exemption and indicated it would adopt the revised proposed order. The court signed the revised proposed order on August 24, 2022, and it was filed on September 2 and served on Sweeney a week later (the September 2 order).

Two portions of the September 2 order are particularly pertinent to this appeal. First, in paragraph 2, certain rights to payments were assigned to the Board until the judgment was satisfied or the order amended. Those rights included a percentage of the judgment debtors' and Frost's disposable earnings; 80 percent of the gross proceeds of the judgment debtors' sales of real, personal, or intangible property and of vehicles (including boats); 90 percent of gross proceeds from any other source of money going to the judgment debtors; and 100 percent of the nonexempt loan value of any insurance policy. And under paragraph 4, the Solano County Sheriff was directed to transfer to the Board all amounts and rights "due and in favor of and for the benefit of Sweeney or the Club, or any of Sweeney's or the Club's parents, assignees, and other persons acting on their behalf." Those amounts included assets from the bank accounts and other accounts of the judgment debtors and of Frost and the sale of a homestead, excluding the amounts subject to a homestead exemption. Sweeney, the Club, and Frost were

_____

[2] All undesignated statutory references are to the Code of Civil Procedure.

4

restrained from disposing of or spending nonexempt amounts, and they were ordered to turn over records every month to ensure enforcement of and compliance with the order.

Apparently in error, the trial court *also* signed the original proposed order—which did not specify a homestead exemption—on August 31, 2022, and filed the order on September 13 (the September 13 order). It does not appear this order was served on the parties.

Sweeney filed a notice of appeal in his name only on November 10, 2022, indicating he appealed from both the order entered on September 2, 2022, and that entered on September 13, 2022, which he characterized as a "Revised" order.

Subsequently, on January 18, 2023, the trial court withdrew the erroneously filed September 13, 2022 order.[3]

## II. Facts Pertinent to Disentitlement

*Sweeney's Noncompliance with Court Orders*

In an effort to enforce the liability and abatement orders, the Board sought discovery to verify Sweeney and the Club's claims of inability to pay and to assist in enforcement. We discuss the Board and the trial court's subsequent efforts to obtain Sweeney's compliance with his discovery obligations in detail in No. A163683, and we will not belabor the facts. For purposes of this appeal, suffice it to say that Sweeney failed repeatedly to appear for debtor examinations, even when ordered by the court; that the trial court issued multiple warrants for his arrest due to his failure to appear; that the trial court found he did not comply with subpoenas seeking

---

[3] Neither party argues the trial court lacked jurisdiction to withdraw the order while it was before this court on appeal.

5

documents; that the court found Sweeney in contempt of court; and that it imposed financial, discovery, and issue sanctions.

*Frost's Noncompliance*

While these events were unfolding, the Board sought to compel the attendance of Frost at a third-party debtor examination on the grounds she possessed or controlled property in which Sweeney had an interest, including bank accounts, real property, and personal property, and that she knew of the whereabouts of Sweeney's assets and other information to aid in the enforcement of the judgment. On February 17, 2022, the trial court ordered her to appear on June 9, 2022. The application and order for Frost's appearance was personally served on March 20, 2022. Frost did not appear, and the trial court continued the matter to July 7 for an examination and order to show cause why the court should not impose sanctions. Frost did not appear as ordered on July 7, August 24, September 22, or October 19, 2022, and a warrant was issued for her arrest. Frost again failed to appear as ordered on March 22, 2023. On that date the trial court found her in contempt for willful failure to appear and produce documents on multiple occasions, and it issued a further bench warrant.

*Transactions After Assignment Order*

The Club filed for bankruptcy in the Eastern District of California on March 10, 2023. (*In re Point Buckler Club*, *LLC* (Bankr. E.D.Cal, No. 23-bk-20755).) Filings in that action show the Club paid its counsel $17,762 in March 2023, $9,500 of which was paid by Sweeney as "a gift to [the Club]," which he did not expect to be repaid. They also show that the Club sold a boat to Sweeney's father-in-law for $10,000 in 2023. Sweeney testified at a creditor examination that he sold the boat because in his view it was not

6

specifically listed in the turnover and assignment order, notwithstanding that order's express assignment of proceeds from the sale of boats.

## DISCUSSION

### I. Timeliness of Appeal

A threshold issue is whether this appeal is timely. We lack jurisdiction over an untimely appeal. (*In re Marriage of Micalizio* (1988) 199 Cal.App.3d 662, 668–669 (*Micalizio*).)

The Board contends the September 2 order is the operative order and that the notice of appeal filed on November 10 was untimely because more than 60 days had elapsed since the order was served. (Cal. Rules of Court, rule 8.104(a)(1)(B).)

We reject this contention. When a trial court substantially modifies a judgment, the modified judgment becomes the appealable judgment. (*Ellis v. Ellis* (2015) 235 Cal.App.4th 837, 842–843; *Avenida San Juan Partnership v. City of San Clemente* (2011) 201 Cal.App.4th 1256, 1267; *Neff v. Ernst* (1957) 48 Cal.2d 628, 633–634.) A substantial modification is one that materially affects the parties' rights. (*Ellis*, at p. 842.) The September 13 order falls within this rule: it substantially modified the September 2 order, to Sweeney's detriment, by omitting the homestead exemption. The September 13 order was thus the appealable order, at least while in effect.

The next question is the effect of the trial court's action in withdrawing the September 13 order. *Micalizio* is instructive on this point. There, judgment was entered on April 29, 1986, and an amended judgment entered on July 1, 1986. On November 21, 1986, the July 1 judgment was declared void, and the appellant appealed the April 29 judgment on January 5, 1987. (*Micalizio*, *supra*, 199 Cal.App.3d at pp. 667–668.) The court concluded that the amended judgment, "even though void, superseded the first judgment and

remained in effect as the operative judgment, suspending the time to appeal from the first judgment, until the amended judgment was declared void in a trial court's minute order of November 21, 1986. When the right of appeal is suspended, an appeal may be taken within the time provided by law after the right is restored." (*Id*. at p. 671.) The appellant in *Micalizio* had no right to appeal from the original judgment while the amended judgment was in place, and when that judgment was reinstated it became a new judgment for purposes of appeal. "[T]he time for filing a notice of appeal from that judgment began from the date the second judgment was declared void in the trial court." (*Id*. at p. 672.)

Although the order before us is an order after judgment rather than a judgment, we see no reason not to apply the same rule here. The Board points out that the September 13 order did not refer to the September 2 order and does not state that it amends or supersedes it. True enough. But the competing orders rule on the same motion and relate to the same hearing, and the September 13 order narrows Sweeney's rights. In the circumstances, the later order may properly be seen as an amended order that substantially modifies the earlier order. It thus became the appealable order, and Sweeney's right to appeal the September 2 order was suspended as long as the September 13 order was in effect. As to the September 2 order, then, the November 10 notice of appeal was premature rather than untimely. We will exercise our discretion to treat the notice of appeal as if filed after reinstatement of the September 2 order. (See *In re Teneka W.* (1995) 37 Cal.App.4th 721, 727.)

## II. Disentitlement Doctrine

Before proceeding to the merits of this appeal, we also consider the Board's contention that we should dismiss the appeal because of Sweeney's repeated defiance of court orders.

Under the disentitlement doctrine, an appellate court has inherent authority to dismiss an appeal by a party who refuses to obey a trial court order. (*Stoltenberg v. Ampton Investments, Inc.* (2013) 215 Cal.App.4th 1225, 1229 (*Stoltenberg*).) This is a discretionary tool, which allows an appeal to be dismissed if justified by the balance of equities. (*Gwartz v. Weilert* (2014) 231 Cal.App.4th 750, 757 (*Gwartz*).) "The rationale underlying the doctrine is that a party to an action cannot seek the aid and assistance of an appellate court while standing in an attitude of contempt to the legal orders and processes of the courts of this state. [Citation.] No formal judgment of contempt is required under the doctrine of disentitlement. [Citation.] An appellate court may dismiss an appeal where the appellant has willfully disobeyed the lower court's orders or engaged in obstructive tactics." (*Id.* at pp. 757–758, fn. omitted.)

*In re Marriage of Hofer* (2012) 208 Cal.App.4th 454 is instructive. The husband in that marital dissolution action had substantial income and assets from businesses owned by his family. His wife sought discovery regarding his financial condition, but he did not comply, despite three discovery orders and sanctions. (*Id.* at pp. 456–457.) The trial court ordered the husband to pay $200,000 for the wife's attorney fees, and he appealed on the ground the trial court failed to take into account his ability to pay. (*Id.* at pp. 457–458; Fam. Code, § 2030.) The appellate court dismissed the appeal, explaining, "Where a party unlawfully withholds evidence of his income and assets, he will not be

9

heard to complain that an order is not based on the evidence he refuses to disclose." (*Hofer*, at pp. 458–459, 461.)

Multiple cases have also applied the disentitlement doctrine to dismiss or stay an appeal when a judgment debtor has frustrated or obstructed efforts to enforce a judgment. (See, e.g., *Gwartz, supra*, 231 Cal.App.4th at pp. 752, 758–761 [judgment debtors violated orders enjoining transfer of assets]; *Stoltenberg, supra*, 215 Cal.App.4th at pp. 1227, 1232–1234 [appellants defied subpoena for financial information despite contempt order]; *Stone v. Bach* (1978) 80 Cal.App.3d 442, 443–444, 448 [appellant twice found in contempt for disobedience of orders to deposit funds and submit to debtor examination]; *Blumberg v. Minthorne* (2015) 233 Cal.App.4th 1384, 1386, 1390–1392 [appellant defied court orders to file accounting and quitclaim property, missed court dates, and lacked candor in communications with court]; *TMS, Inc. v. Aihara* (1999) 71 Cal.App.4th 377 [judgment debtors willfully disobeyed court order to answer postjudgment interrogatories]; *Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1682–1683, 1691 [willful defiance of trial court orders].)

The Board argues that Sweeney's repeated defiance of court orders meets these standards, and it asks us to apply the disentitlement doctrine to dismiss this appeal. We agree that the record shows a dismaying pattern of disobedience of court orders, and in the context of this case we are particularly troubled by his "gift" of $9,500 to the Club and by the sale of the Club's boat to his father-in-law, in apparent violation of the very order he challenges in this appeal. But, as we explain in No. A163683, it appears Sweeney has made recent efforts to comply with trial court orders and the record provided to us does not show clearly what, if any, discovery obligations Sweeney is currently avoiding. Although the facts here might well support

10

application of the disentitlement doctrine, at the present juncture we decline to exercise our discretion to dismiss the action. Instead, we will consider appellants' contentions on the merits.

## III. Jurisdiction over Frost

Sweeney's first contention is that the trial court lacked jurisdiction over Frost because the Board did not serve her with process, but merely served the assignment motion by mail. As a result, Sweeney argues, the order was void as to Frost.

It is not clear that Sweeney has standing to raise this issue on Frost's behalf, and Frost is not a party to this appeal. (See *Stump's Market, Inc. v. Plaza de Santa Fe Limited, LLC* (2013) 212 Cal.App.4th 882, 892 [case must present actual controversy between parties]; *In re D.S.* (2007) 156 Cal.App.4th 671, 674 ["a would-be appellant 'lacks standing to raise issues affecting another person's interests' "].) But, as Sweeney points out, he has an interest in Frost's property, at least to the extent it is community property. (See *In re Marriage of Hillerman* (1980) 109 Cal.App.3d 334, 340 ["The interest of each spouse in the assets of the marital community are 'present, existing and equal' during the continuance of the marriage"]; *In re Caitlin B.* (2000) 78 Cal.App.4th 1190, 1193 [" 'Where the interests of two parties interweave, either party has standing to litigate issues that have a[n] impact upon the related interests"].)

Regardless of the outcome of that inquiry, we reject Sweeney's argument on the merits. First, Frost was personally served on March 20, 2022 with an order to appear for a debtor examination, requiring her to "answer concerning property of the judgment debtor in your possession or control . . ." The statutory scheme governing enforcement of money judgments (§ 680.010 et seq.) authorizes a judgment creditor to serve

11

personally an order for examination of a third person who has possession or control of property in which the judgment debtor has an interest (§ 708.120, subds. (a) & (b)). Service of the order creates a lien on the judgment debtor's interest in the property. (§ 708.120, subd. (c).) And, under the same statutory scheme, community property—including "the community property interest of the spouse of the judgment debtor"—is subject to enforcement of a money judgment. (§ 695.020.) We are satisfied the trial court had jurisdiction to order community property in Frost's possession or control to be applied to satisfy the judgment.

Sweeney argues that the order improperly encompasses not only community property but also Frost's separate property in excess of the trial court's jurisdiction. We disagree, and we note that the Board disavows any claim over Frost's separate property under the order. Paragraph 2 of the order assigns specified percentages of Frost's future earnings, and Sweeney makes no contention these earnings are not community property. (Fam. Code, § 760.) Paragraph 4 authorizes transfers of any amounts "due and in favor of and for the benefit of Sweeney or the Club"; this directive "includes but is not limited to" a variety of categories, including "[a]ll assets from . . . Frost's" bank accounts and other accounts. Although the "[a]ll assets" language in isolation may be broad enough to encompass Frost's separate property, its placement in paragraph 4 shows it extends only to assets that are "due and in favor of and for the benefit of Sweeney or the Club," not to any separate property in which neither Sweeney nor the Club has an interest.

We therefore reject Sweeney's claim that the order exceeded the trial court's jurisdiction.

## IV.  Overbreadth

Sweeney's remaining contention is that the order is overbroad in two respects.

First, he argues the categories of property assigned to the Board are unauthorized.  Section 708.510, under which the request for an assignment order was made, sets forth the categories of property that may be assigned. It provides that a court may assign to the judgment creditor "all or part of a right to payment due or to become due, whether or not the right is conditioned on future developments, including *but not limited to* the following types of payments:  [¶] (1) Wages due from the federal government . . . [¶] (2) Rents. [¶] (3) Commissions. [¶] (4) Royalties. [¶] (5) Payments due from a patent or copyright. [¶] (6) Insurance policy loan value."  (§ 708.510, subd. (a), italics added.)

Sweeney contends paragraph 2 of the order is overbroad because the property it assigns is not limited to the six enumerated categories.  He contends the categories do not encompass such items as percentages of disposable and future earnings; sales of real, personal, and intangible property; and other sources of money.  But by the terms of the statute, the six categories are not exclusive, and Sweeney makes no showing that the matters encompassed by the order do not constitute "all or part of a right to payment due or to become due."  (§ 708.510, subd. (a).)

Second, Sweeney challenges paragraph 4 of the order, which directs the transfer of "[a]ll accounts, accounts receivable, rights to payment of money, contingent rights, contract rights, deposit and deposit accounts, checking accounts, certificate of deposits, lines of credit, credit balances due under ATM cards, savings accounts, trust accounts, and safety deposit boxes, claims against third parties, monies due from third parties, due and in favor of and

13

for the benefit of Sweeney or the Club," including assets from the judgment debtors' and Frost's accounts. He also points to paragraph 6, which requires Sweeney, the Club, and Frost to turn over records each month to ensure enforcement of the order. Sweeney argues these provisions are overbroad because they encompass Frost's separate property. We have already concluded that, properly read, paragraph 4 does not reach Frost's separate property. And Sweeney has not shown that he will suffer any injury through Frost being required to turn over her records under paragraph 6. (See *In re Caitlin B.*, *supra*, 78 Cal.App.4th at p. 1193 [in the absence of intertwined interests, party may not raise issues on appeal that do not affect his or her own rights].)

Sweeney also contends paragraph 4 is overbroad because it seeks turnover of cash or other assets held in the accounts subject to the order, rather than merely documentary evidence of title. But section 699.040 authorizes the court to order the judgment debtor to transfer to the levying officer not only "[p]ossession of documentary evidence of title to property of or a debt owed to the judgment debtor," but also "[p]ossession of the property sought to be levied upon if the property is sought to be levied upon by taking it into custody." (§ 699.040, subd. (a)(1) & (2).) Sweeney has not shown the order falls outside this authorization.

In his reply brief, Sweeney argues for the first time that the order improperly requires Frost, a third party, rather than the judgment debtor, to transfer the property to the levying officer. (§ 699.040, subd. (a); *Office Depot, Inc. v. Zuccarini* (N.D. Cal. 2007) 488 F.Supp.2d 920, 922.) We do not consider contentions raised for the first time in a reply brief. (*Moran v. Endres* (2006) 135 Cal.App.4th 952, 956.)

## DISPOSITION

The September 2, 2022 order is affirmed.  To the extent the withdrawal of the September 13 order was ineffective for lack of jurisdiction, the September 13, 2022 is reversed.  In the interests of justice, each party is to bear its own costs on appeal.


TUCHER, P.J.


WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.

15

RODRÍGUEZ, J., Concurring.

I agree with and join in the majority's disposition and analysis of the merits. I write separately because I would have applied the doctrine of appellate disentitlement and dismissed the appeal due to repeated and ongoing violations of court orders. (*Stoltenberg v. Ampton Investments, Inc.* (2013) 215 Cal.App.4th 1225, 1230 ["an appellate court 'may dismiss an appeal where there has been *willful disobedience or obstructive tactics*' "].) "A party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders and processes of the courts of this state." (*MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277.)

I won't spill a lot of ink laying out the extent of the " 'wilful disobedience or obstructive tactics' " at issue here (*Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1683); the majority ably does so. (Maj. opn. *ante*, at pp. 5–7.) Suffice it to say John D. Sweeney repeatedly obstructed respondent's discovery efforts and violated numerous court orders to appear at debtor examinations and hearings. (*Id.* at pp. 5–6.) The trial court imposed monetary sanctions, found him in contempt on more than one occasion, and issued several bench warrants for his arrest. (*Ibid.*) Nevertheless — seemingly unbowed and undeterred — Sweeney's refusal to comply with court orders apparently continues. Moreover, even if he could demonstrate some compliance, I would apply the doctrine and dismiss. I do not believe "seeing the light" at the eleventh hour or halting and occasional compliance at a time of a party's choosing precludes appellate disentitlement.

I acknowledge the "right to an appeal must not be lightly forfeited, and where a doubt exists as to a litigant's conduct being contumacious or wilful, an appellate court will tolerate temporarily the acts which were disruptive of

1

the judicial process." (*Tobin v. Casaus* (1954) 128 Cal.App.2d 588, 592.)  But this is the hopefully rare case where a party's persistent and willful disobedience and obstructive conduct warrants appellate disentitlement.

                                   _____

                                   Rodríguez, J.