Filed 11/3/14 (pub. order 11/18/14; see end of opn.)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BRIAN L. GWARTZ et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>MICHAEL WEILERT et al.,<br><br>    Defendants and Appellants. | F066581<br><br>(Super. Ct. No. 09CECG01032)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Kristi C. Kapetan, Judge.

Wild, Carter & Tipton and Steven E. Paganetti for Defendants and Appellants.

Law Offices of Daniel B. Spitzer, Daniel B. Spitzer; and Cheryl A. Skigin for Plaintiffs and Respondents.

-ooOoo-

This appeal follows a highly publicized jury trial of a fraud claim arising from a $2.3 million sale of 15 acres of land that included a residence, riding arena and associated buildings, located on South Kings Canyon Road, Parlier, California. The plaintiffs who purchased the property obtained a judgment for $1,553,800, which included $850,000 in punitive damages.

Plaintiffs were unsuccessful in attempting to collect the judgment and moved for various postjudgment orders. The trial court granted these motions and the orders issued have been referred to as the freeze order, the turnover order, the assignment order and the charging order. Among other things, the orders enjoined defendants and their agents from selling, spending, transferring or dissipating any of their assets, which included money in any deposit account. When plaintiffs learned that defendants had violated the orders, they filed a motion to dismiss the appeal under the doctrine of disentitlement. Plaintiffs' moving papers identified 47 different transfers of money that violated the trial court's orders.

The motion to dismiss presents a threshold question that must be decided before reaching the merits of the appeal. Based on our review of the motion and opposition papers, including a declaration from defendant Michael Weilert that did not deny any of the 47 transactions took place, and argument by counsel, we conclude the balance of the equitable considerations relevant to the disentitlement doctrine favor dismissal. It would be unjust to allow defendants to seek the benefits of an appeal while willfully disobeying the trial court's valid orders and frustrating plaintiffs' legitimate efforts to enforce the judgment.

We therefore grant plaintiffs' motion to dismiss the appeal.

**FACTS AND PROCEEDINGS**

*The Parties*

The plaintiffs in this lawsuit are Brian L. Gwartz and his wife, Cheryl A. Skigin, cotrustees of the Pendragon Trust.

2.

Michael Weilert, M.D. (Weilert) and his wife, Genevieve Weilert, who also is known as Genevieve de Montremare (Genevieve),[1] are the defendants in this action. The following entities are owned or controlled by Weilert and Genevieve.

*Defendants' Related Entities*

The M&G Weilert Family, L.P. (Weilert FLP) is a limited partnership owned 10 percent by Weilert, 40 percent by Genevieve, and 50 percent by the Madonna della Pieta Trust, which is a living trust established in February 2009 with Genevieve as its sole trustee.[2] It appears that the Weilert FLP has become the owner of many of the assets of Weilert and Genevieve including the next three entities discussed. In addition, defendants transferred investment real estate located in Clovis and Arroyo Grande to the Weilert FLP after the judgment was entered, but before the motions for a new trial and judgment notwithstanding the verdict were denied.

Michael Weilert, M.D., Inc. (MD Inc.), is a California corporation that has been in the business of providing medical service since 1981. Weilert once was the sole shareholder of MD Inc. Now, Weilert FLP is the sole shareholder of MD Inc. Weilert remains an employee of, and performs all the services associated with, the corporation. Those services are provided to Pathology Associates, the business under which Weilert conducts his medical practice as a pathologist.

Pathology Associates is a California general partnership that provides pathology services to physicians and hospitals. Weilert FLP is one of the general partners and holds

---

[1]     In responses to form interrogatories, Genevieve stated her name was (1) Genevieve Marie Anna Sanders from birth in 1962 until she was married in February 1988, (2) Genevieve Marie Anna Hoffman from February 1988 until 1991, when it was legally changed to Genevieve Marie de Montremare. Genevieve verified the responses on May 7, 2010, using the name Genevieve Weilert. During a June 2010 independent medical examination conducted to determine if Genevieve was capable of being deposed, she stated she was Genevieve Sanders, not Genevieve Weilert.

[2]     Weilert testified that the property held within the trust was Genevieve's sole and separate property.

a 10 percent ownership interest in Pathology Associates.  Also, Weilert is the managing partner of Pathology Associates and, compared to the other partners, receives an additional draw of $2,000 per month for acting in that capacity.  At one time, MD Inc. received partnership draws from the Pathology Associates.

Sierra Pathology Building, LLC is a California limited liability company that owns the building occupied by Pathology Associates.  Weilert FLP owns a one-ninth interest in Sierra Pathology Building, LLC.

Free Market Medical Systems, LLC (Free Market) is a California limited liability company that was formed shortly before the trial in this case.  On April 5, 2013, Weilert testified (1) Weilert FLP had put $150,000 into the company; (2) its purpose was to develop software products for use in medical offices; (3) its other member was Patricia Tam Ellis, a person familiar with software; (4) no application had been made for a copyright, design patent or other form of intellectual property; and (5) no written business plan existed.  On May 3, 2013, Weilert testified he had made transfers of $100,000 and $75,000 into Free Market's bank account in anticipation of future business expense because he expected "to start coding on projects" and would need to pay the programmer.  At the time, Weilert was the sole signatory on Free Market's bank account with Wells Fargo.

Belle Reve, LLC is a California limited liability company owned by Weilert and Genevieve.

After the judgment was entered in this case in October 2012, Weilert and Genevieve, along with MD Inc. and Weilert FLP filed petitions in bankruptcy court.[3]

---

**3**     On September 9, 2013, the bankruptcy case for MD Inc. was filed and assigned case No. 13-16062.  On September 13, 2013, defendants filed *In re Michael Weilert and Genevieve de Montremare* (Bankr. E.D.Cal, Case No. 13-16155), a proceeding under Chapter 7 (liquidation) of the Bankruptcy Code as well as the bankruptcy case for Weilert FLP, which was assigned case No. 13-16156.  [Fn. cont.]

Those bankruptcy proceedings are mentioned only briefly because (1) the transfers examined here occurred before the petitions were filed and (2) any bankruptcy stay that might have barred this court from moving forward in this matter has been lifted. (See pt. I.B.3, *post*.)

*The Underlying Fraudulent Real Estate Sale*

In March 2008, plaintiffs agreed to purchase approximately 15 acres of land from Weilert for $2.3 million. The property included a residence, a riding arena and associated buildings. The documents for the sale included (1) a California residential purchase agreement and joint escrow instructions, (2) a real estate transfer disclosure statement, (3) a buyer's inspection advisory, and (4) a supplemental statutory and contractual disclosures. All of these documents were prepared using preprinted forms published by the California Association of Realtors. In the real estate transfer disclosure statement, Weilert represented that he was not aware of any room additions, structural modification, or other alterations or repairs (1) made without the necessary permits (except for the pool house) or (2) not in compliance with building codes.

Plaintiffs alleged Weilert made misrepresentations regarding the property, including that (1) the construction of the residence had cost close to $2 million, (2) marble lions imported from Genevieve's family in France came with the house, (3) the property had a private beach, and (4) the property had been permitted for a boat dock. Plaintiffs also alleged the parties agreed that Weilert would complete a covered riding arena, barn and irrigation system prior to the close of escrow.

*The Lawsuit*

In March 2009, plaintiffs filed a complaint against Weilert and Genevieve, alleging fraud and other causes of action arising from the real estate transaction.

Weilert FLP had filed its first bankruptcy petition (case No. 13-14036) on June 7, 2013. On July 18, 2013, the bankruptcy trustee filed a motion to dismiss the case, which the bankruptcy court granted in an order dated August 13, 2013.

The trial began in September 2012. The first phase was a bench trial for the purpose of determining whether the purchase agreement was an integrated document. Defendants hoped to show the purchase agreement was integrated and its "as-is" clause barred plaintiffs' claims they made misrepresentations. The trial court rejected defendants' position, ruling the purchase agreement was not integrated and parol evidence could be presented to the jury.

During the second phase of the trial, a jury was presented with plaintiffs' causes of action for breach of contract, fraud by intentional misrepresentation, fraud by concealment, negligent misrepresentation, and a common count for work, labor and materials provided by plaintiffs to defendants. The jury decided these causes of action in favor of plaintiffs and also awarded plaintiffs $850,000 in punitive damages.

*The Judgment and Appeal*

On October 30, 2012, the trial court filed a judgment on jury verdict that awarded plaintiffs $1,553,800, plus attorney fees and costs in an amount to be determined.

Defendants subsequently filed a motion for a new trial and a motion for judgment notwithstanding the verdict. The trial court denied these motions.

On December 28, 2012, defendants filed a notice of appeal from the judgment and the trial court's order denying their motion for new trial and motion for judgment notwithstanding the verdict.

Defendants did not post a bond to stay the enforcement of the judgment as provided in Code of Civil Procedure section 917.1.

*The Postjudgment Orders*

On April 5, 2013, Weilert testified during a judgment debtor examination at the superior court that Weilert FLP had a bank account with Wells Fargo Bank with approximately $225,000. Plaintiffs requested the trial court for an order directing the turnover of the funds. The court directed that the matter be put on calendar and a written ex parte application be filed. The court then stated, "I again repeat my cautionary

6.

comment. I think it behooves the judgment debtors not to change the status quo for the next, whatever, two business days it may take to have the matter heard on the merits."

Despite this admonition, sometime between April 5, 2013, and the continued judgment debtor examination on May 3, 2013, Weilert made transfers of $75,000 and $100,000 to the bank account of Free Market.

On May 3, 2013, a hearing was held on the written application for a turnover order. The trial court continued the hearing on the turnover application and issued an order prohibiting the transfer or concealment of assets. The written form of the May 3, 2013, order[4] was filed on May 6, 2013, and provided that

> "(a) the judgment debtors, Weilert and Genevieve, individually or as agents, employees, officers or other representative capacity for (b) the Weilert FLP, (c) Free Market, (d) Belle Reve, (e) MD Inc., and (f) the [Madonna della Pieta] Trust, and their respective agents, representatives, employees and attorneys, and all others acting in concert with them, are hereby restrained and enjoined from selling, withdrawing, spending, transferring, encumbering, dissipating, or assigning any assets (including without limitation money on deposit in any deposit account) of the judgment debtors, Weilert FLP, Free Market, Belle Reve, MD Inc. and the [Madonna della Pieta] Trust."

The order continued the hearing on application for a turnover order until May 16, 2013, and stated the freeze order would remain in effect until that hearing.

On May 16, 2013, the trial court reinstated the freeze order. The court also granted plaintiffs' motion for a turnover order and their motion for an assignment order. The court took plaintiffs' motion for a charging order under submission and filed a written charging order on May 28, 2013.

---

**4** The order was labeled "ORDER FOR TEMPORARY RESTRAINING ORDER, FOR CONTINUED HEARING ON EX PARTE APPLICATION FOR TURNOVER ORDER AND FOR CONTINUED JUDGMENT DEBTOR EXAMINATION OF MICHAEL WEILERT." For purposes of this opinion, it is referred to as the "freeze order."

The turnover order directed defendants and their affiliated entities to deliver to the levying officer (1) vehicles and their documents of title; (2) horses and their documents of title; (3) documents of title for real estate in Fresno and San Luis Obispo Counties; and (4) all certificated and uncertificated securities representing interests in MD Inc., Belle Reve, LLC, Weilert FLP, Sierra Pathology Building, LLC, and Free Market.

The assignment order stated that all payments due the defendants or the entities they owned or controlled (to the extent necessary to satisfy the judgment in full) were assigned to the plaintiffs. The order specifically mentioned (1) rental income from three parcels of real property; (2) payments, distributions or partnership draws due to MD Inc. from Pathology Associates; (3) payments due Belle Reve, LLC from any source; and (4) payments due to Weilert or his affiliated entities from Sierra Pathology Building, LLC.

The charging order stated that the interests of the defendants in the Weilert FLP; Pathology Associates; Belle Reve, LLC; Sierra Pathology Building, LLC; and MD Inc. were charged with the unpaid balance due under the October 30, 2012, judgment.

*The Motion to Dismiss*

On December 23, 2013, plaintiffs filed their motion to dismiss this appeal. The motion listed 47 transactions by defendants and their affiliated entities that violated the trial court's May 6, 2013, order prohibiting transfers of funds in a deposit account.

Eventually, after a specific order from this court, defendants filed an opposition to the motion to dismiss that addressed whether dismissal was appropriate under the doctrine of disentitlement.

**DISCUSSION**

Plaintiffs' motion to dismiss the appeal pursuant to California's doctrine of disentitlement presents this court with a threshold question that, if decided in plaintiffs' favor, would mean the merits of defendants' appeal from the judgment are not reached. Because the motion to dismiss will be granted, this opinion sets forth our reasons for

8.

dismissing the appeal and does not reach the merits of the appeal. (See Cal. Const., art. VI, § 14 [written appellate decisions].)

I.      DISENTITLEMENT DOCTRINE

A.      Legal Principles

An appellate court has the inherent power to dismiss an appeal by a party that refuses to comply with a lower court order. (*Stoltenberg v. Ampton Investments Inc.* (2013) 215 Cal.App.4th 1225, 1229 (*Stoltenberg*).) This doctrine of disentitlement is not jurisdictional, but is a discretionary tool that may be used to dismiss an appeal when the balance of the equitable concerns makes dismissal an appropriate sanction. (*Id.* at p. 1230.) The rationale underlying the doctrine is that a party to an action cannot seek the aid and assistance of an appellate court while standing in an attitude of contempt to the legal orders and processes of the courts of this state.[5] (*Ibid.*) No formal judgment of contempt is required under the doctrine of disentitlement. (*Ibid.*) An appellate court may dismiss an appeal where the appellant has willfully disobeyed the lower court's orders or engaged in obstructive tactics. (*Ibid.*)

The disentitlement doctrine has been applied to a wide range of cases, including cases in which an appellant is a judgment debtor who has frustrated or obstructed legitimate efforts to enforce a judgment. (E.g., *Stoltenberg*, *supra*, 215 Cal.App.4th 1225 [defendants repeatedly, and in contempt of sister-state orders, frustrated the enforcement of the California judgment that was the subject of their appeal]; *TMS, Inc. v. Aihara* (1999) 71 Cal.App.4th 377 [appeal dismissed where, despite trial court's order, defendants willfully refused to respond to postjudgment interrogatories]; *Stone v. Bach* (1978) 80 Cal.App.3d 442 [appellant disobeyed a prejudgment order directing the deposit

---

**5**     This rationale appears to be derived from the fundamental principle of equity jurisprudence that one who seeks equity must do equity. (*Dool v. First National Bank* (1929) 207 Cal. 347, 351.) A similar rationale underlies the equitable defense of unclean hands. (*Polanski v. Superior Court* (2009) 180 Cal.App.4th 507, 532.)

9.

of partnership funds collected by him into a trustee account and, after the judgment, was found in contempt for failing to appear at a judgment debtor examination].)

B.    Application of Doctrine to These Facts

1.    *Transfers Identified in Motion to Dismiss*

All 47 transactions identified in plaintiffs' motion are not discussed here because it will suffice to examine a portion of the transfers involving Weilert himself. These transfers adequately demonstrate that Weilert violated the trial court's freeze order.

Specifically, we will consider 13 transfers totaling $285,000 that were made from Weilert's bank account to (1) MD Inc., (2) Belle Reve, (3) Free Market, and (4) American Express between June 3, 2013, and September 13, 2013.

The five transfers made by Weilert to MD Inc. totaled $135,000[6] and were made in the following amounts and on the following dates:

| Amount | Date |
|--------|------|
| $15,000 | June 17, 2013 |
| $ 5,000 | July 19, 2013 |
| $10,000 | August 2, 2013 |
| $50,000 | August 6, 2013 |
| $55,000 | August 8, 2013 |

Weilert also made four transfers totaling $3,000 to Belle Reve:

| Amount | Date |
|--------|------|
| $ 600 | July 1, 2013 |
| $ 600 | July 22, 2013 |
| $ 800 | August 6, 2013 |

---

[6]    We recognize that the 47 transactions listed in the motion to dismiss include 14 transfers from MD Inc. to Weilert totaling $43,100. If these transfers are offset against those made by Weilert to MD Inc., the net amount transferred from Weilert to MD Inc. is $91,900.

$ 1,000    August 12, 2013

On June 20, 2013, Weilert transferred $120,000 to Free Market.

From September 9 through 12, 2013, Weilert made three payments to American Express totaling $27,000.

Plaintiffs learned of these transactions when defendants filed schedules and statements of financial affairs in the bankruptcy cases involving themselves, MD Inc. and Weilert FLP.

### 2. *Defendants' Oppositions*

On January 7, 2014, defendants filed an opposition to plaintiffs' motion to dismiss the appeal that did not address the disentitlement doctrine, but argued a motion to dismiss based on a failure to file an appellate brief was premature.

On February 6, 2014, defendants filed a supplemental opposition to the motion to dismiss and requested sanctions against plaintiffs on the ground that the motion was frivolous. Again, defendants asserted a motion to dismiss for failure to file an appellant's opening brief was premature under California Rules of Court, rule 8.220(a).

On March 7, 2014, this court filed an order stating that defendants had failed to respond *to the merits of the motion to dismiss* and granted them 10 days leave to file such a response.

Defendants then filed an opposition that addressed the merits and was supported by a declaration of Weilert and a motion for judicial notice of various documents. Defendants' opposition asserted (1) the motion to dismiss was subject to a bankruptcy stay and (2) the facts did not support equitable relief under the disentitlement doctrine.

### 3. *Bankruptcy Stay and Its Effect on the Appeal*

A few days after receiving this opposition from defendants, this court issued an order directing plaintiffs to respond to defendants' claim that a bankruptcy stay was in effect. Plaintiffs' reply stated the bankruptcy court had entered an order lifting the automatic stay as to this appeal in its entirety. Defendants filed a supplemental

opposition stating this appeal may proceed by virtue of the bankruptcy court's order lifting the stay, but that order did not allow plaintiffs to pursue their motion to dismiss.

The bankruptcy court order referenced by the parties was signed by United States Bankruptcy Judge W. Richard Lee on October 10, 2013. The order states in relevant part:

> "1. The Stay is lifted to permit the parties to proceed to a final determination of claims from the Court of Appeals but not to enforce any judgment against the debtor or bankruptcy estate. Any affirmation of the judgment obtained shall be brought back to this Court for the proper treatment of claims under the Bankruptcy Code."

We interpret this order to mean that this court is not barred from addressing any issues necessary to resolve the appeal, including those issues presented by plaintiffs' motion to dismiss under the disentitlement doctrine. Therefore, we explicitly reject defendants' interpretation that the bankruptcy stay was not lifted as to the motion to dismiss.

### 4. *Weilert's Violations of the Freeze Order*

Weilert's declaration in opposition to the motion to dismiss does not deny that any of the 47 transactions listed in the motion took place. Indeed, Weilert effectively admits the transfers occurred in the following statement:

> "[Plaintiffs] are substantially and materially wrong in the monetary amount they allege at page 8 of their motion seeking to dismiss my appeal. [Plaintiffs] reference an amount of $812,690.00. However, the actual amount is less than 1/3 of this amount. Without getting into the details of the various transfers, [plaintiffs] in effect re-calculated money twice or three times when the amount is the same money being transferred from one account to another."

In addition, Weilert's declaration included the following assertion: "The actions I took at all times relevant were done in good faith." He offers no explanation for how he could have been acting in good faith when transferring money in violation of the trial court's freeze order.

12.

Based on our review of the evidence presented to support the motion to dismiss and the opposition papers (including the Weilert declaration), we conclude that Weilert willfully violated the trial court's freeze order on many occasions by transferring money.

Initially, we note defendants did not address the violations raised in the motion to dismiss in their first two sets of opposition papers. They addressed the violations and the application of the disentitlement doctrine only after this court issued an order directing them to do so.

When defendants addressed merits of the motion to dismiss, they did not deny the transfers listed in the motion occurred and did not explain how those transfers might have been permissible under the trial court's orders. Instead, defendants argued the amount of money that had been moved was only one-third of the total identified in the motion to dismiss. This approach, for all practical purposes, admits money was transferred in violation of the freeze order.

Furthermore, Weilert's assertion that his actions were done in good faith is unconvincing because defendants have offered no explanation for (1) how the transfers could have been made without violating the trial court's orders or (2) how he acted with a pure heart and a head so empty that he did not realize he was violating the orders.[7] In addition, Weilert fails to explain his inaction—namely, his failure to comply with the turnover order and the assignment order. For example, Weilert's declaration does not

---

[7] We note that in some contexts, a claim of subjective good faith is referred to as the "pure heart, empty head" defense. (Jones, *"Stop, Think & Investigate": Should California Adopt Federal Rule 11* (1993) 22 Sw.U. L.Rev. 337 [1983 amendment the federal rule regarding sanctions eliminated the pure heart, empty head defense]; Maute, *Sporting Theory of Justice: Taming Adversarial Zeal with Logical Sanctions Doctrine* (1987) 20 Conn. L.Rev. 7, 18; see *United States National Bank of Oregon v. Boge* (1990) 311 Or. 550, 565 [814 P.2d 1082, 1090] [all that subjective good faith requires is a pure heart and empty head]; *Thornton v. Wahl* (7th Cir. 1986) 787 F.2d 1151, 1154 [Judge Easterbrook discusses sanctions under Fed. Rules Civ. Proc., rule 11, 28 U.S.C.A., for counsel's wildly untrue representations about state law].)

dispute the facts set forth in the declaration of Daniel Spitzer regarding the service of the orders upon him.

The record shows that defendants are seeking the benefits of an appeal while willfully disobeying the trial court's valid orders and thereby frustrating defendants' legitimate efforts to enforce the judgment. Therefore, we conclude the equitable considerations relevant to the disentitlement doctrine favor dismissal of this appeal.

II.     APPEAL IN CASE NO. F067958

Weilert and Genevieve also filed an appeal from the freeze, turnover, assignment and charging orders entered by the trial court after the judgment. That appeal has been assigned case No. F067958.

On May 13, 2014, plaintiffs filed a motion to dismiss the second appeal on the same grounds asserted in their motion to dismiss the first appeal.

We will grant that motion to dismiss in a separate order based on the rationale set forth in this opinion.

**DISPOSITION**

The motion to dismiss the defendants' appeal is granted. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

Defendants' request for sanctions filed on February 6, 2014, is denied.

_____
                                                          Franson, J.

WE CONCUR:

_____
Kane, Acting P.J.

_____
Peña, J.

14.

Filed 11/18/14

IN THE

# Court of Appeal of the State of California

IN AND FOR THE

# Fifth Appellate District

| | |
|---|---|
| BRIAN L. GWARTZ et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>MICHAEL WEILERT et al.,<br><br>    Defendants and Appellants. | F066581<br><br>(Super. Ct. No. 09CECG01032)<br><br>**ORDER GRANTING REQUEST FOR PUBLICATION** |

      As the nonpublished opinion filed on November 3, 2014, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.


_____
                             Franson, J.


WE CONCUR:


_____
Kane, Acting P.J.


_____
Peña, J.