Filed 12/8/23  P. ex rel. San Francisco Bay Conservation etc. v. Sweeney CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA EX REL. SAN FRANCISCO BAY CONSERVATION AND DEVELOPMENT COMMISSION,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN D. SWEENEY,<br><br>    Defendant and Appellant. | A166565<br><br>(Solano County<br>Super. Ct. No. FCS057728) |

John D. Sweeney and the Point Buckler Club, LLC (collectively, defendants), acting without permits, converted an island in Suisun Marsh from tidal marsh to mostly dry land, and marketed it as a kiteboarding recreational area.  The San Francisco Bay Conservation and Development Commission (BCDC or Commission) issued an order to Sweeney and the Club in November 2016 directing them to cease and desist and assessing a civil penalty of $772,000 (Commission Cease and Desist Order No. 2016.02; the cease and desist order or Order No. 2016.02).  Sweeney and the Club challenged the order in a writ proceeding.  The trial court set the order aside, and in 2021 a different panel of this court reversed, finding the order valid.

1

(*Sweeney v. San Francisco Bay Conservation & Development Com.* (2021) 62 Cal.App.5th 1, 8 (*Sweeney v. BCDC I*).)

Alleging Sweeney and the Club failed to comply with the cease and desist order, BCDC brought an action for injunctive relief against them, seeking an injunction requiring compliance with the cease and desist order, an order directing payment of the previously imposed civil penalty, and additional penalties of up to $6,000 per day the violation continued.  (Gov. Code, § 66641.)[1]  The trial court granted the injunction, directed payment of the $772,000, and ordered Sweeney and the Club to pay additional daily penalties of $6,000 for the time he had been intentionally or negligently out of compliance with the cease and desist order, for a total of $2,220,000 (the penalty order).  Sweeney appeals, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying the penalty order are set forth in *Sweeney v. BCDC I*, and we need not repeat them in detail to resolve the issues that this appeal presents.[2]

---

[1] All undesignated statutory references are to the Government Code.

[2] We are familiar with this case not only through *Sweeney v. BCDC I*, but also through our review of other matters related to Sweeney and the Club's activities on the island.  Most notable for our purposes here, the Regional Water Quality Control Board (RWQCB) carried out administrative proceedings against Sweeney and the Club for violations of the federal Clean Water Act of 1977 (33 U.S.C. § 1251 et seq.) and the California Water Code, and in *Sweeney v. California Regional Water Quality Control Bd.* (2021) 61 Cal.App.5th 1093, a different panel of this division upheld a cleanup and abatement order directing them to implement corrective actions (order No. R2-2016-0038; the abatement order) and an administrative civil liability order requiring them to pay penalties of approximately $2.8 million (order No. R2-2016-0008).  (*Id.* at pp. 1109–1110, 1151.)  Sweeney and the Club failed to comply with the abatement order; the RWQCB obtained an injunction directing it to do so; and in *Sweeney v. Regional Water Quality*

The cease and desist order directed Sweeney and the Club to refrain from activity that violated the Suisun Marsh Preservation Act of 1977 (Pub. Res. Code, § 29000 et seq.) and the McAteer-Petris Act (Gov. Code, § 66600 et seq.) at Point Buckler Island, including placing fill or engaging in development without a permit.  The order also directed them to submit a restoration plan and a mitigation-and-monitoring plan that were acceptable to BCDC's executive director and to apply for permits for their past and future activities.  Finally, it included a civil penalty order directing Sweeney and the Club to pay $772,000 to BCDC's Bay Fill Clean-Up and Abatement Fund.  (See §§ 66641.5, subd. (e), 66641.9.)  In assessing this penalty, the Commission noted that RWQCB staff had investigated and determined that Sweeney and the Club "have the ability to pay a substantial penalty," and Sweeney and the Club had submitted no evidence of their assets "to establish that they would be unable to pay the penalty" the BCDC was considering.

In February 2021, this division upheld the cease and desist order. (*Sweeney v. BCDC I*, *supra*, 62 Cal.App.5th 1.)  On remand, the trial court on

---

*Control Bd.* (A163683, Aug. 31, 2023) (nonpub. opn.), we affirmed the order granting the injunction.  On the same date, we affirmed a separate order assigning to the RWQCB certain assets and income of Sweeney, his wife, and the Club.  (*Sweeney v. Regional Water Quality Control Bd.* (A166629, Aug. 31, 2023) [nonpub. opn.] (A166629).)  We note that although Sweeney challenged both the RWQCB's abatement order and BCDC's cease and desist order in a single action, the proceedings were severed and bifurcated.  We will refer to the trial court proceedings underlying the appeals related to the RWQCB as "the RWQCB proceedings."  (*People ex rel. San Francisco Bay Conservation and Development Commission v. John D. Sweeney et al.* (Super. Ct. Solano County, 2022, No. FCS048136).)

In addition, the United States filed an action against Sweeney and the Club in the Eastern District of California, and the court found them in violation of the Clean Water Act.  (33 U.S.C. §§ 1311, 1344; *United States v. Sweeney* (E.D.Cal. 2020) 483 F.Supp.3d 871, 878.)

3

September 3, 2021 declared the cease and desist order in full force and effect and denied Sweeney and the Club's petition for writ of mandate.

In January 2022, the Commission brought this action seeking (1) injunctive relief directing defendants to comply fully with the cease and desist order (§ 66640); (2) an order requiring them to pay up to $6,000 for each day that they were in violation of the cease and desist order (§ 66641); and (3) an order requiring defendants to pay the $772,000 penalty with interest (§ 66641.7).

Initially represented by counsel, defendants filed a substitution of attorney form indicating that they would represent themselves. Sweeney filed a general denial, not only on his own behalf but also purportedly on behalf of the Club. The trial court entered default against the Club on June 15, 2022.

The trial court held a hearing on the order to show cause on August 11, 2022. The minute order of that date indicates the court issued a permanent injunction and awarded the civil penalty of $6,000 per day. On September 1, 2022, the court held a hearing on the Commission's motion for judgment to collect the $772,000 administrative civil penalty.

The trial court entered judgment in favor of BCDC and against Sweeney on all causes of action in a written order dated September 8, 2022 and filed September 20, 2022. Specifically, it issued an injunction mandating that Sweeney "immediately comply in full with all of the cease and desist, restoration, monitoring, and related portions of the Commission's Cease and Desist and Penalty Order No. CDO 2016.02"; ordered Sweeney, jointly and severally with the Club, to pay a civil penalty of $2,220,000, based on $6,000 for each of the 370 days since September 3, 2021 that Sweeney had persisted in violating the cease and desist order; and directed Sweeney to pay the

4

previously ordered $772,000 civil penalty with interest. Representing himself, Sweeney filed a timely notice of appeal.

Separately, default judgment was entered against the Club on September 22, 2022, requiring it to comply with all the terms of the cease and desist order, pay the administrative penalty with interest jointly and severally with Sweeney, and pay additional civil penalties of $6,000 a day for 342 days, for a total of $2,052,000.

## DISCUSSION

### I. Disentitlement Doctrine

BCDC asks us to dismiss the appeal because of Sweeney's repeated defiance of court orders. We faced a similar contention in considering two of his prior appeals.

As we explained in A166629, "[u]nder the disentitlement doctrine, an appellate court has inherent authority to dismiss an appeal by a party who refuses to obey a trial court order. (*Stoltenberg v. Ampton Investments, Inc.* (2013) 215 Cal.App.4th 1225, 1229 (*Stoltenberg*).) This is a discretionary tool, which allows an appeal to be dismissed if justified by the balance of equities. (*Gwartz v. Weilert* (2014) 231 Cal.App.4th 750, 757 (*Gwartz*).) 'The rationale underlying the doctrine is that a party to an action cannot seek the aid and assistance of an appellate court while standing in an attitude of contempt to the legal orders and processes of the courts of this state. [Citation.] No formal judgment of contempt is required under the doctrine of disentitlement. [Citation.] An appellate court may dismiss an appeal where the appellant has willfully disobeyed the lower court's orders or engaged in obstructive tactics.' (*Id.* at pp. 757–758, fn. omitted.)

"*In re Marriage of Hofer* (2012) 208 Cal.App.4th 454 is instructive. The husband in that marital dissolution action had substantial income and assets

5

from businesses owned by his family. His wife sought discovery regarding his financial condition, but he did not comply, despite three discovery orders and sanctions. (*Id.* at pp. 456–457.) The trial court ordered the husband to pay $200,000 for the wife's attorney fees, and he appealed on the ground the trial court failed to take into account his ability to pay. (*Id.* at pp. 457–458; Fam. Code, § 2030.) The appellate court dismissed the appeal, explaining, 'Where a party unlawfully withholds evidence of his income and assets, he will not be heard to complain that an order is not based on the evidence he refuses to disclose.' (*Hofer*, at pp. 458–459, 461.)

"Multiple cases have also applied the disentitlement doctrine to dismiss or stay an appeal when a judgment debtor has frustrated or obstructed efforts to enforce a judgment. (See, e.g., *Gwartz*, *supra*, 231 Cal.App.4th at pp. 752, 758–761 [judgment debtors violated orders enjoining transfer of assets]; *Stoltenberg*, *supra*, 215 Cal.App.4th at pp. 1227, 1232–1234 [appellants defied subpoena for financial information despite contempt order]; *Stone v. Bach* (1978) 80 Cal.App.3d 442, 443–444, 448 [appellant twice found in contempt for disobedience of orders to deposit funds and submit to debtor examination]; *Blumberg v. Minthorne* (2015) 233 Cal.App.4th 1384, 1386, 1390–1392 [appellant defied court orders to file accounting and quitclaim property, missed court dates, and lacked candor in communications with court]; *TMS, Inc. v. Aihara* (1999) 71 Cal.App.4th 377 [judgment debtors willfully disobeyed court order to answer postjudgment interrogatories]; *Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1682–1683, 1691 [willful defiance of trial court orders].)"

BCDC asks us to apply the disentitlement doctrine because, even after issuance of the injunction at issue here, Sweeney still has not complied with the September 3, 2021 judgment declaring the cease and desist order in full

force and effect.  And, BCDC argues, Sweeney obstructed the RWQCB's efforts to enforce its own abatement order and the judgment in its own action against him.

We decline to apply the disentitlement doctrine here, just as we declined to do so in connection with Sweeney's appeals in the RWQCB proceedings, despite his lack of compliance with multiple court orders.  It would be anomalous to rely on his behavior in connection with that to dismiss an appeal to which the RWQCB is *not* a party.  As to his noncompliance with the order underlying the injunction now before us, Sweeney points out, with some force, that because BCDC may properly obtain an injunction only when a person fails to comply with, as relevant here, a cease and desist order (§ 66640, subd. (a)), to apply the disentitlement doctrine for that very failure to comply would effectively make the injunction unreviewable.  Under the circumstances, we will consider Sweeney's appeal on the merits.

## II.    Issuance of Injunction

The McAteer-Petris Act, which created BCDC, requires anyone "wishing to place fill, to extract materials, or to make any substantial change in use of any water, land or structure, within the area of the commission's jurisdiction" to obtain a permit from the Commission.  (§ 66632, subd. (a); *People ex rel. Younger v. F.E. Crites, Inc.* (1975) 51 Cal.App.3d 961, 963.)  The Commission may issue a cease and desist order if it determines a person or governmental agency has undertaken or threatens to undertake such an activity without a permit.  (§ 66638, subd. (a).)  If a person does not comply with a cease and desist order the Commission may seek an injunction (§ 66640, subd. (a)), as well as civil penalties of up to $6,000 for each day the violation persists (§ 66641, subd. (a)).

7

The decision whether to issue a permanent injunction rests in the trial court's sound discretion, and we do not reverse without a showing of clear abuse of that discretion. (*Thompson v. 10,000 RV Sales, Inc.* (2005) 130 Cal.App.4th 950, 964 (*Thompson*).) Abuse of discretion is found if the court exceeded the bounds of reason and there has been a miscarriage of justice. (*Antelope Valley Groundwater Cases* (2021) 63 Cal.App.5th 17, 43.) A trial court also abuses its discretion if it acts with a mistaken view of the scope of its discretion. (*Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 782.)

### A. The Equities

Sweeney challenges the injunction on multiple fronts. In related arguments, he contends that the trial court must weigh the equities before issuing an injunction under section 66620 and that the injunction was inequitable and violated due process because Sweeney was financially unable to comply with it. These arguments fail.

Section 66640 provides that, "[u]pon the failure of a person to comply with . . . a cease and desist order issued by the executive director or the commission, . . . the Attorney General, upon request of the commission, shall petition the superior court for the issuance of a preliminary or permanent injunction, or both, as may be appropriate, restraining the person or persons from continuing any activity in violation of the . . . order." (§ 66640, subd. (a).) The evidence may include not only "the record before the executive director or the commission, whoever initially issued the order," but also "any other relevant evidence that, in the judgment of the court, should be considered to effectuate and implement the policies of this title," and "the court shall exercise its independent judgment on the evidence." (§ 66640, subd. (b).) The court must "issue an order directing defendants to appear

8

before the court at a time and place certain and show cause why the injunction should not be issued," and it may then "grant any prohibitory or mandatory relief that may be warranted." (§ 66640, subd. (c).)

Sweeney relies primarily on two cases he contends establish that if a statute does not mandate an injunction, traditional equitable principles should be considered in deciding whether one should issue. In *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376 (*Laurel Heights*), our high court ruled an environmental impact report (EIR) for a facility at the University of California, San Francisco (UCSF) was inadequate based on deficiencies in its discussions of future uses of the facility and alternatives; the court upheld, however, the finding that the environmental effects identified in the present EIR would be mitigated. (*Id.* at pp. 387–388.) After reaching this result, the high court considered whether UCSF should be allowed to continue its current activities at the site pending certification of a proper EIR. (*Id.* at p. 422.) It noted that the California Environmental Quality Act (Pub. Res. Code, § 21000 et seq.; CEQA) required a court, upon finding a CEQA violation, to enter an order with one or more specified provisions, one of which was a mandate ordering all activity suspended. (*Laurel Heights*, at pp. 422–423, citing Pub. Res. Code, § 21168.9, subd. (a).) The high court continued, "Because CEQA does not require us to enjoin the present activity, we rely on traditional equitable principles in deciding whether injunctive relief is appropriate." (*Laurel Heights*, at p. 423.) Noting that the primary purpose of CEQA is to protect the environment, and in light of the substantial evidence that the environmental effects of the present activities would be mitigated, the high court declined to enjoin all activities at the site. (*Laurel Heights*, at p. 424.)

9

The court in *Laurel Heights* relied (as does Sweeney) on a decision of the United States Supreme Court, *Weinberger v. Romero-Barcelo* (1982) 456 U.S. 305 (*Romero-Barcelo*), which declined to require an injunction after the United States Navy was found in violation of the Federal Water Pollution Control Act's mandate that it obtain a permit for weapons training during which naval ordnance fell into the sea. (*Romero-Barcelo*, at pp. 306–308; see *Laurel Heights*, *supra*, 47 Cal.3d at p. 423.) The United States Supreme Court rejected the argument that failure to issue an injunction would undermine the integrity of the permit process by allowing the statutory violation to continue, reasoning that to protect "[t]he integrity of the Nation's waters . . . not the permit process, is the purpose of the" statute in question, and lack of an injunction would not undercut that purpose because the Navy had been ordered to obtain a permit and the activity had not polluted the water. (*Romero-Barcelo*, at pp. 314–315.)

Sweeney contends these cases require a consideration of equitable factors here as well—including his claimed inability to comply with the cease and desist order—and that these factors militate against the injunction.

We need not decide the legal question because we are unpersuaded on the facts. First, the record does not show Sweeney provided any evidence he could not afford to comply with the cease and desist order until *after* the hearing at which he was required to "appear before the court . . . and show cause why the injunction should not be entered" (§ 66640, subd. (c)), and *after* the trial court had issued its ruling granting the injunction. In his reply to BCDC's request for an injunction and civil penalties, Sweeney argued BCDC would have to "update [his] Ability to Pay," and he stated that "[u]nder no model will BCDC ever get even one dollar," but he offered no evidence of his financial condition.

10

The hearing on the order to show cause was held on August 11, 2022, with Sweeney present, and the minute order of that hearing states that, after hearing oral argument, the court "issues a permanent injunction . . . requiring Mr. Sweeney to comply with" the cease and desist order and to pay penalties of $6,000 per day. Only after that hearing, on August 31, 2022, did Sweeney file an "additional opposition to order to show cause and motion for judgment." (Block capitalization omitted.) In that submission, he argued that he had no money, and he attached as an exhibit a declaration from the RWQCB proceedings in which he stated he could not afford to comply with the abatement order because he had "no cash or other liquid assets," few assets other than the island of any value, and considerable debts, and he estimated it would cost millions of dollars to comply with the abatement order. But Sweeney filed these papers the day before the court held a separate hearing, at which he did not appear, on the Commission's motion for judgment to collect the pending $772,000 penalty, and Sweeney does not challenge that aspect of the court's ruling. Having failed to present his evidence and argue its significance before the court issued its ruling, Sweeney forfeited his right to complain that the court should have considered it. (See *People v. Trujillo* (2015) 60 Cal.4th 850, 856 (*Trujillo*) [party generally must preserve claims of trial error by timely objection]; *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28 (*North Coast*) [failure to preserve point below constitutes waiver].)

Sweeney argues that it would have been futile to raise the issue because, in the separate proceedings involving the RWQCB's request for an injunction requiring compliance with that agency's abatement order, the court had rejected his contention that he could not afford to comply. But not only did those proceedings consider a different order, they were based on a

11

different statutory scheme (Porter-Cologne Water Quality Control Act, Wat. Code, § 13000 et seq.; see Wat. Code, § 13304, subd. (a)), and Sweeney has not shown the trial court would not have considered appropriate arguments under the statutory scheme at issue here.[3]

Sweeney suggests that, because he was self-represented, the Commission had the ethical obligation to inform the court that he could not afford to comply with the court's order. But self-represented litigants are not exempt from following the rules of procedure, nor are they absolved of the requirement to introduce evidence in support of their own case. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.)

Sweeney's arguments also fail for another reason. The injunction does no more than direct him to comply with the cease and desist order. Sweeney already had the opportunity to raise any appropriate objections to the cease and desist order when the Commission issued it and when he brought his petition for writ of mandate. In the appeal from that proceeding, this division upheld the validity of the order, and that decision is final and binding on the trial court. (*Sweeney v. BCDC I*, *supra*, 62 Cal.App.5th at pp. 8–9, 29; *Auto Equity Sales*, *Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity*);

---

[3] We also note that the record does not include either a transcript of the August 11, 2022 hearing at which the court made its ruling or a settled statement. The minute order of the hearing does not explain the court's reasoning, and the written order filed on September 20, 2022 merely recites that after considering the parties' written submissions and oral argument, the court rejected all of Sweeney's arguments and issued the permanent injunction. This record does not disclose whether or not at oral argument Sweeney raised, and the court considered, the question of his financial ability to comply with the injunction. (See *Foust v. San Jose Construction Co.*, *Inc.* (2011) 198 Cal.App.4th 181, 187 [judgment is presumed correct and appellant bears burden to show error on adequate record].)

see *Ojavan Investors, Inc. v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 383 (*Ojavan Investors*) [res judicata prevents relitigation of enforceability of cease and desist order].)

In rejecting Sweeney's arguments related to his inability to comply with the injunction, we need not determine whether equitable factors would ever be relevant in considering a request for an injunction under section 66640. We simply conclude that Sweeney has not met his burden to show error here.

## B.     Overbreadth

Sweeney contends the injunction is not narrowly drawn so as to provide reasonable notice of what conduct is enjoined. (See *Thompson, supra,* 130 Cal.App.4th at p. 979.) The injunction requires him to comply with certain portions of the cease and desist order, including the requirements that he submit a restoration plan and a mitigation-and-monitoring plan acceptable to the Commission's executive director. These provisions, Sweeney argues, are not described with enough detail that he or the Club can determine exactly what is required. And, he contends, because compliance requires the subjective approval of BCDC's executive director, it is impossible to determine objectively what he must do to comply.

This argument fails. First, Sweeney did not raise it in the trial court until after the hearing at which the court issued the injunction, and he has therefore forfeited it. (See *Trujillo, supra,* 60 Cal.4th at p. 856; *North Coast, supra,* 17 Cal.App.4th at p. 28.) Where Sweeney's reply contends otherwise, it points to briefing Sweeney submitted in the RWQCB proceedings rather than in this case, and in opposition to a different injunction.

More fundamentally, Sweeney's challenge is to the provisions of the cease and desist order itself. The injunction did no more than require

13

appellants to comply with that order, an order that was already once challenged by writ of mandate and upheld in *Sweeney v. BCDC I.* That ruling is final and may not now be challenged.[4] (*Auto Equity*, *supra*, 57 Cal.2d at p. 455; *Ojavan Investors*, *supra*, 54 Cal.App.4th at p. 383.)

## C. Evidentiary Support

Sweeney also challenges the order on the ground it is unsupported by substantial evidence. This contention is meritless. Sweeney acknowledges there is no dispute that he did not comply with the requirements that he submit and implement plans and that he pay the $772,000 penalty. And the Commission submitted evidence, in the form of a declaration of Matthew Trujillo, its enforcement policy manager, that BCDC's records showed defendants had not complied with any aspect of the order, including payment of the administrative civil penalty.

Sweeney contends Trujillo's declaration is conclusory and lacks evidentiary value, but there is no indication he objected to it on that ground in the trial court, and he has therefore forfeited any challenge to its admissibility. (Evid. Code, § 353, subd. (a); *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 726.) As to its persuasive value, we acknowledge the declaration is barebones, but the testimony of one witness with personal knowledge can be substantial evidence (*Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1376), and Sweeney thus fails to establish that the

---

[4] We recognize that under the McAteer-Petris Act, failure to file a petition for writ of mandate challenging a cease and desist order does not preclude a party from challenging an order's reasonableness and validity during judicial proceedings to enforce the order. (§ 66639, subd. (a).) But here, Sweeney *did* bring an action, and we upheld the order. (*Sweeney v. BCDC I, supra,* 62 Cal.App.5th 1.)

14

Commission did not offer substantial evidence of his failure to comply with the cease and desist order.[5]

## D. Adequacy of Hearing

Sweeney also contends he was deprived of his right to a trial on the disputed issues. He relies on section 592 of the Code of Civil Procedure, which provides that in actions for recovery of property, for contract damages, or for injuries, issues of fact must be tried by a jury unless there is a waiver. But this action is not governed by that statute. Rather it is governed by the McAteer-Petris Act, which directs the court, when considering a petition for an injunction, to issue an order to show cause and authorizes the court to grant any injunction that is warranted. (§ 66640, subd. (c).) Sweeney has not shown he was deprived of his right to present evidence or that the trial court proceeded improperly.

## III. Civil Penalties

The McAteer-Petris Act provides that one "who intentionally or negligently violates any cease and desist order" of the Commission may be liable for a civil penalty of no more than $6,000 for each day the violation persists. (§ 66641, subd. (a).)

When considering a petition seeking civil penalties, "the court shall take into consideration all relevant circumstances, including but not limited to, the extent of harm caused by the violation, the nature and persistence of the violation, the length of time over which the violation occurs and corrective action, if any, taken by the person or governmental agency charged."

---

[5] In his reply brief, Sweeney also argues section 66640 contemplates the Commission will hold a hearing to determine noncompliance, but we need not consider arguments made for the first time in a reply brief. (*Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, 548.)

15

(§ 66641, subd. (b).) The provisions of section 66640 apply to these proceedings. (§ 66641, subd. (c).)

In support of the petition, the Commission pointed to defendants' violations of the McAteer-Petris Act and the Suisun Marsh Preservation Act, and argued that Sweeney had taken no action to comply with the Commission's order to remediate the effects of that illegal conduct. And, the Commission argued, the Legislature enacted the McAteer-Petris Act to prevent exactly the kind of conduct in which Sweeney had engaged. These factors, according to the Commission, supported imposition of a substantial civil penalty in addition to the outstanding $772,000 administrative penalty the Commission had already imposed for the underlying violations. As evidentiary support, the Commission submitted the declaration in which Trujillo, its enforcement policy manager, stated he had "reviewed all of the Commission's files and records related to the [Order No. 2016.02], and at no time before or since September 3, 2021, have Defendants complied with any aspect of the Order, including payment of the $772,000 administrative civil penalty imposed by the Order."

At the August 11, 2022 hearing, the trial court ordered each defendant to pay civil penalties of $6,000 per day since the judgment was entered. The written order recited: "Pursuant to Government Code section 66641, the Court also determined that Defendant Sweeney intentionally and/or negligently violated the Commission's Order, and the Court ordered Defendant Sweeney to pay a civil penalty in the amount of $6,000 for each day since September 3, 2021 . . . that Defendant Sweeney has failed to comply with the Commission's Order. That amount was based on the Court's consideration of all relevant circumstances. (See Gov. Code, § 66641, subd. (b).)" Those circumstances, the court explained, included "the extent of

16

harm caused by the violations, the nature and persistence of the violations, the length of time over which the violations occurred, and the failure by Defendant Sweeney to take any corrective action."

## A. Evidence in Support of Penalty

Sweeney contends the declaration BCDC submitted is purely conclusory, "plainly false," and does not support the award of civil penalties. Sweeney does not dispute that he was out of compliance with the cease and desist order's requirements that he submit and implement restoration and mitigation plans that meet with the executive director's approval. But, he argues, there is no evidence that he was continuing his unpermitted activities, and the statement that he had not complied with any portion of the order was therefore false. And, he points out, the record shows that he attempted to quitclaim title to the property to Robert Bonta, the Attorney General, in what he characterizes as an attempt to pay the $772,000 penalty.[6] He also appears to suggest that his submission of plans for restoration and mitigation to the RWQCB constituted attempted compliance with the BCDC's cease and desist order. Moreover, he contends, the Commission had the obligation to inform the court of these facts.

We are unpersuaded. Even assuming the language of the declaration the Commission submitted was overbroad, Sweeney points to nothing to suggest the trial court's ruling was based on a misapprehension that he was continuing his unauthorized development activities. And the court took judicial notice of the nonacceptance of the quitclaim deed, showing that it was aware of Sweeney's effort to transfer title to the island. As to the plan

---

[6] Bonta, in his personal capacity and as California's Attorney General, recorded a non-acceptance of the quitclaim deed.

17

submitted to the RWQCB, Sweeney makes no showing either that he submitted it to the Commission or that it satisfied the terms of the cease and desist order.

Sweeney argues, however, that there is no evidence his failure to comply with the order was intentional or negligent, as required for the imposition of civil penalties (§ 66641, subd. (a)), because he could not afford to prepare and implement the required plans or pay the $772,000.[7] But there is no dispute that Sweeney knew of his affirmative obligations under the cease and desist order, and the Commission provided evidence that he did nothing to comply with them during the nearly year-long period after the trial court declared the order in full force and effect. Nothing in section 66641 suggests the Commission had the burden to delve into Sweeney's finances in the first instance to determine whether he could afford to develop and implement the plans or satisfy any other portions of the cease and desist order. And, as we have already explained, Sweeney did not submit any evidence about how much it would cost to satisfy these requirements, or his ability to meet that cost, until *after* the hearing at which the court imposed the penalties. On the record before it when it made its decision, the trial court could reasonably find that Sweeney intentionally or negligently violated the cease and desist order.

In reaching this conclusion, we do not hold that a person's genuine inability to comply with a cease and desist order can never bear on whether a

---

[7] It is not clear that Sweeney's failure to pay the $772,000 administrative penalty that BCDC imposed in Order No. 2016.02 pursuant to section 66641.5 was a factor in the civil penalty the trial court imposed. Section 66641 authorizes the court to order civil penalties for violation of a "cease and desist order," and to justify imposition of a substantial penalty the Commission cited only Sweeney's failure to remediate the effects of his illegal conduct.

failure to do so is intentional or negligent. Nor do we suggest Sweeney may not offer, and the trial court should not consider, evidence of his financial condition during any future proceedings regarding, for instance, further penalties or contempt. (See *United States v. Rylander* (1983) 460 U.S. 752, 757 [in contempt proceeding, court is not "blind to evidence that compliance is now factually impossible"].) We simply conclude that the record now before us is sufficient to support the imposition of civil penalties under section 66641.

### B. Excessive Penalty

Sweeney contends the $6,000 per day penalty is unconstitutionally excessive and that it violates his right to due process because he is unable to comply with it.

The constitutions of both the United States and California prohibit infliction of "excessive fines." (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.) The touchstone of the inquiry is "the principle of proportionality. [Citation.] The amount of the fine must bear some relationship to the gravity of the offense that it is designed to punish, and a fine that is grossly disproportional to the gravity of the defendant's offense violates the excessive fines clause. [Citation.] In deciding the matter, we consider '(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay.'" (*Sweeney v. BCDC I*, *supra*, 62 Cal.App.5th at p. 19.) But where, as here, a statute does not state that a defendant's ability to pay is essential to determining the penalty, the party seeking the penalty need not prove the defendant's ability to pay; the burden to show *inability* to pay rests rather with the defendant. (*Lent v. California Coastal Com.* (2021) 62 Cal.App.5th 812, 860 (*Lent*), citing *People v. First Federal Credit Corp.* (2002)

104 Cal.App.4th 721, 728, 731.)  In the absence of disputed factual issues, we review de novo whether a penalty is constitutionally excessive.  (*People ex. rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 731.)

Sweeney has not shown the trial court committed error in imposing the penalty.  This division has already concluded that the evidence underlying the cease and desist order showed Sweeney bore substantial culpability and that the harm from the unauthorized activities is substantial (*Sweeney v. BCDC I*, *supra*, 62 Cal.App.5th at pp. 19–20), and there is no indication he sought to take corrective action in the ensuing years.  A daily penalty of up to $6,000 per day is within range of other statutory penalties for activities that cause environmental harm; indeed, as explained in *Lent*, some statutes authorize significantly higher penalties.  (*Lent*, *supra*, 62 Cal.App.5th at pp. 859–860, citing, inter alia, Fish & G. Code, §§ 5901, 12025.1 [daily penalty of up to $8,000 for constructing or maintaining device in stream that impedes passing of fish]; Health & Saf. Code, § 25191 [daily penalties of up to $25,000 or $50,000 for violating hazardous waste laws].)  And unlike the statute underlying the penalty struck down in *Hale v. Morgan* (1978) 22 Cal.3d 388, 399, 404, upon which Sweeney relies, section 66641 does not require a fixed penalty, but rather gives the trial court discretion to consider all relevant factors in setting the appropriate amount.

Finally, as we have explained, Sweeney bore the burden to show his inability to pay (*Lent*, *supra*, 62 Cal.App.5th at p. 860), and he did not do so at or before the hearing at which the court imposed the penalty.[8]

---

[8] In his reply brief, Sweeney withdraws two arguments made in his opening brief: that the trial court lacked jurisdiction, and that the injunction exceeds the relief BCDC sought in its petition.  We do not consider these arguments.

## DISPOSITION

The judgment is affirmed.  Parties shall bear their own costs on appeal.

TUCHER, P.J.


WE CONCUR:


FUJISAKI, J.
RODRÍGUEZ, J.


*People ex rel. San Francisco Bay Conservation and Development Commission v. Sweeney* (A166565)

21